IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. _17-_ |
| | | |
| v. | : | DATE FILED: _2-8-17_ |
| | | |
| JUAN JARMON, | : | VIOLATIONS: |
|    a/k/a "J," | | 21 U.S.C. § 846 (conspiracy to distribute |
|    a/k/a "Yizzo," | : | 280 grams or more of cocaine base |
| DAMON EDWARDS, | | ("crack") – 1 count) |
|    a/k/a "Boo," | : | 21 U.S.C. § 841(a)(1) (distribution of |
|    a/k/a "Boo-Boo," | | cocaine base ("crack") – 14 counts) |
| EDWARD STINSON, | : | 21 U.S.C. § 841(a)(1) (possession with |
|    a/k/a "E-Black," | | intent to distribute cocaine base ("crack") |
| DONTA EDWARDS, | : | – 8 counts) |
|    a/k/a "Boog," | | 21 U.S.C. § 860(a) (distribution of cocaine |
| RAHEEN BUTLER, | : | base ("crack") within 1,000 feet of public |
|    a/k/a "Raheem," | | housing – 14 counts) |
|    a/k/a "Riddles," | : | 21 U.S.C. § 860(a) (possession with intent |
|    a/k/a "Ra-Ra," | | to distribute cocaine base ("crack") |
| MICHAEL FERRELL, | : | within 1,000 feet of public housing – 8 |
|    a/k/a "Mike," | | counts) |
| DOTTIE GOOD, | : | 21 U.S.C. § 843(b) (unlawful use of a |
|    a/k/a "Dreds," | | communication facility in furtherance of |
|    a/k/a "Dots," | : | a drug felony – 2 counts) |
| TAFT HARRIS, JR., | | 21 U.S.C. § 856 (maintaining a drug |
|    a/k/a "Taff," | : | house – 1 count) |
|    a/k/a "Taz," | | 21 U.S.C. § 2 (aiding and abetting) |
| STEVEN THOMPSON | : | Notices of forfeiture |
|    a/k/a "Tall Steve," | | |
| STEPHEN DAWKINS, SR. | : | |
|    a/k/a "Diamond," | | |
| DEREK FERNANDES, | : | |
|    a/k/a "Reds," | | |
|    a/k/a "Mark Carr," | : | |
| ANTHONY LEE STAGGERS, | | |
|    a/k/a "Ant," | : | |
| GENE WILSON, JR., | | |
|    a/k/a "Big Gene" | : | |

## INDICTMENT

## COUNT ONE

**THE GRAND JURY CHARGES THAT:**

1.     From at least in or about late 2012 through late 2014, in Philadelphia, in the

Eastern District of Pennsylvania, and elsewhere, defendants

**JUAN JARMON,**
a/k/a "J,"
a/k/a "Yizzo,"
**DAMON EDWARDS,**
a/k/a "Boo,"
a/k/a "Boo-Boo,"
**EDWARD STINSON,**
a/k/a "E-Black,"
**DONTA EDWARDS,**
a/k/a "Boog,"
**RAHEEN BUTLER,**
a/k/a "Raheem,"
a/k/a "Riddles,"
a/k/a "Ra-Ra,"
**MICHAEL FERRELL,**
a/k/a "Mike,"
**DOTTIE GOOD,**
a/k/a "Dreds,"
a/k/a "Dots,"
**TAFT HARRIS, JR.,**
a/k/a "Taff,"
a/k/a "Taz,"
**STEVEN THOMPSON,**
a/k/a "Tall Steve,"
**STEPHEN DAWKINS, SR.,**
a/k/a "Diamond,"
**DEREK FERNANDES,**
a/k/a "Reds,"
a/k/a "Mark Carr,"
**ANTHONY LEE STAGGERS,**
a/k/a "Ant," and
**GENE WILSON, JR.,**
a/k/a "Big Gene,"

conspired and agreed, together and with others known and unknown to the grand jury, to knowingly and intentionally distribute 280 grams or more of a mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A).

It was part of the conspiracy that:

## BACKGROUND

2.      The Norman Blumberg Apartment Complex, hereinafter referred to as "Blumberg," was a public housing facility in North Philadelphia owned by the Philadelphia Housing Authority and designed to provide affordable housing to low income residents.

3.      Blumberg's geographic territory was bordered by North 22nd Street to the East, North 24th Street to the West, Jefferson Street to the South, and Oxford Street to the North. Blumberg contained a children's playground located within 1,000 feet of each of its two high-rise towers.

4.      Blumberg was comprised of two high-rise towers, each containing eighteen floors with nine apartments on each floor, and a series of connected row home units, or "low-rises." One of the high-rise towers was located at 1516 Judson Way, hereinafter referred to as the "Judson Building."  The other high-rise tower was located at 1515 Hemberger Way, hereinafter referred to as the "Hemberger Building."

## MANNER AND MEANS

5.      Defendants JUAN JARMON, DAMON EDWARDS, and EDWARD STINSON, in association with Person #1, a person known to the grand jury, controlled drug sales on various floors in the Hemberger Building and Judson Building.

6.      Defendants JUAN JARMON and DAMON EDWARDS were leaders of a crack cocaine distribution group that operated an around-the-clock drug distribution business in Blumberg, hereinafter referred to as the "JARMON/EDWARDS Drug Trafficking Group," or JARMON/EDWARDS DTG.

7.      For a period prior to late 2012, drug sales in the Hemberger Building were controlled by defendant EDWARD STINSON.  In or about late 2012 or early 2013, defendant STINSON assigned control of drug sales in the Hemberger Building to the JARMON/EDWARDS DTG.  From at least in or about early 2013 through in or about early to mid 2014, the JARMON/EDWARDS DTG operated in the Hemberger Building, where members worked and distributed crack cocaine on the 18th floor and other locations inside of the Hemberger Building.  In or about early to mid 2014, defendant STINSON "evicted" defendants JUAN JARMON and DAMON EDWARDS from the Hemberger Building, and the JARMON/EDWARDS DTG moved to the Judson Building, where members worked and distributed crack cocaine on the 14th floor of the Judson Building and other locations inside of the Judson Building.

8.      Defendants JUAN JARMON and DAMON EDWARDS were the leaders of the JARMON/EDWARDS DTG.  Defendant EDWARD STINSON was incarcerated in state prison at various times during the course of the conspiracy, but when not in prison, defendant STINSON was also a leader of the JARMON/EDWARDS DTG.  Defendant DONTA EDWARDS assisted defendants JARMON, DAMON EDWARDS, and STINSON in their leadership of the DTG at relevant times during the course of the conspiracy.  Defendants JARMON, DAMON EDWARDS, STINSON, and DONTA EDWARDS, among other duties, purchased bulk crack and cocaine, cooked and packaged crack cocaine into bundles, sold crack

4

cocaine to other drug traffickers and drug users, hired, fired, and supervised shift sellers and lookouts, secured apartment space and stash locations for their members, supplied bundles of crack cocaine to shift sellers, collected drug proceeds from shift sellers, levied taxes on members and customers, and provided protection from other drug trafficking groups.

9.    Defendants RAHEEN BUTLER, MICHAEL FERRELL, DOTTIE GOOD, TAFT HARRIS, and STEVEN THOMPSON, as well as R.C., charged elsewhere, Person #2, a juvenile, and Person #3, all known to the grand jury, and others unknown to the grand jury, were shift sellers for the JARMON/EDWARDS DTG at relevant times during the course of the conspiracy. Shift sellers were the daily workers employed by defendants JUAN JARMON and DAMON EDWARDS to sell crack cocaine, sometimes referred to as "grinding" or "trapping," in the locations controlled by the JARMON/EDWARDS DTG. Shift sellers typically worked a day shift (8am to 4pm), evening shift (4pm to midnight), or overnight shift (midnight to 8am). Shift sellers typically sold $5 "nick" and $10 "dime" bags of crack cocaine to drug users and addicts throughout their shift.

10.    Defendants STEPHEN DAWKINS, DEREK FERNANDES, ANTHONY LEE STAGGERS, and GENE WILSON, as well as Person #4, known to the grand jury, and others unknown to the grand jury, were lookouts for the JARMON/EDWARDS DTG at relevant times during the course of the conspiracy. Lookouts assisted other members of the JARMON/EDWARDS DTG by alerting them to the presence of law enforcement in the area, sometimes referred to as "protecting the building," and at times locating, identifying, and directing customers to the shift sellers. Lookouts typically worked the same shifts as shift sellers.

11.     Defendant GENE WILSON, as well as R.C., Person #4, Person #5, Person #6, all known to the grand jury, and others unknown to the grand jury permitted, or were asked to permit, defendants JUAN JARMON and DAMON EDWARDS, and other members of the JARMON/EDWARDS DTG, to use their apartments for the purpose of storing, manufacturing, and distributing crack cocaine, and hiding from law enforcement.

12.     Members of the JARMON/EDWARDS DTG engaged in acts of intimidation, threats, and violence, possessed firearms and other weapons, and preyed on the financial weakness and vulnerability of persons, such as drug users and addicts, single mothers, young women, juveniles, the mentally ill, and those living in poverty, in order to further the interests of the DTG.

13.     Members of the JARMON/EDWARDS DTG attempted to avoid law enforcement detection by, among other means, limiting their communications regarding crack cocaine distribution when on the phone, using cryptic and coded language to describe crack cocaine distribution, obtaining pre-paid mobile phones ("burner phones") and other phones with fake subscriber names or nominees, warning each other and other drug traffickers of the presence of law enforcement in the area, and using counter-surveillance tactics.

## **OVERT ACTS**

In furtherance of the conspiracy, and to accomplish its objects, the defendants and others known and unknown to the grand jury committed the following overt acts, among others, in the Eastern District of Pennsylvania:

1.     On or about October 3, 2012, defendant EDWARD STINSON, while incarcerated in state prison, gave permission to defendant JUAN JARMON, via telephone, to operate a crack

cocaine distribution business on the 18th floor of the Hemberger Building, telling defendant JARMON that he could "make all the money off the building, right now."

2.       On or about April 18, 2013, on the 18th floor of the Hemberger Building, defendant DOTTIE GOOD distributed approximately 0.22 grams of crack cocaine to Person #7, known to the grand jury.

3.       On or about April 25, 2013, on the 18th floor of the Hemberger Building, defendant DOTTIE GOOD distributed approximately 0.61 grams of crack cocaine to Person #7.

4.       On or about May 3, 2013, on the 2300 block of Redner Way inside of Blumberg, defendant JUAN JARMON distributed approximately 2.1 grams of crack cocaine to Person #8, known to the grand jury.

5.       On or about May 8, 2013, outside of 1023 West Norris Street, Philadelphia, Pennsylvania, defendant JUAN JARMON distributed approximately 4.9 grams of crack cocaine to Person #8.

6.       On or about May 17, 2013, on the 2300 block of Redner Way inside of Blumberg, defendant JUAN JARMON distributed approximately 8.9 grams of crack cocaine to Person #8.

7.       In or around June 2013, defendant JUAN JARMON assaulted defendant DOTTIE GOOD in a dispute over drug proceeds from the JARMON/EDWARDS DTG.

8.       On or about June 11, 2013, on the 2400 block of West Oxford Street, Philadelphia, Pennsylvania, defendant JUAN JARMON distributed approximately 22.7 grams of crack cocaine to Person #8.

9.       On or about July 12, 2013, on the 2400 block of West Oxford Street, Philadelphia, Pennsylvania, defendant JUAN JARMON distributed approximately one ounce of a substance purported to be crack cocaine to Person #8.

10.     On or about August 2, 2013, on the 2300 block of Redner Way inside of Blumberg, defendant JUAN JARMON distributed approximately 16.1 grams of crack cocaine to Person #8.

11.     On or about August 14, 2013, at approximately 2:27 pm, on the 2300 block of Redner Way inside of Blumberg, defendants JUAN JARMON and DAMON EDWARDS distributed, and aided and abetted the distribution of, approximately 6.1 grams of crack cocaine to Person #8.

12.     On or about August 30, 2013, at approximately 4:34 pm, defendant MICHAEL FERRELL provided defendant JUAN JARMON, via telephone, with an update on the quantity of crack cocaine sold during defendant FERRELL's shift.

On or about August 31, 2013:

13.     At approximately 2:36 pm, R.C. provided defendant JUAN JARMON, via telephone, with an update on the quantity of crack cocaine sold by the shift sellers the night before, including by R.C. and defendants MICHAEL FERRELL and RAHEEN BUTLER.

14.     At approximately 6:05 pm, defendant JUAN JARMON and R.C. discussed, via telephone, the operation of the JARMON/EDWARDS DTG.  When R.C. informed defendant JARMON that defendant ANTHONY LEE STAGGERS had provided late notice that he could not work as a lookout that day, defendant JARMON said, "F*ck all these motherf*ckers, man. I'm going to get some new lookouts, man."

15.     At approximately 9:00 pm, defendant JUAN JARMON and R.C. arranged, via telephone, access to the stash location where the JARMON/EDWARDS DTG kept drugs and drug proceeds.

On or about September 1, 2013

16.      At approximately 7:56 pm, defendant JUAN JARMON and R.C. discussed, via telephone, the availability of defendant ANTHONY LEE STAGGERS to work as a lookout for that night's shift.

17.      At approximately 11:15 pm, defendant MICHAEL FERRELL asked for permission from defendant JUAN JARMON for another shift seller, "Jay," unknown to the grand jury, to cover his shift on Tuesday so defendant FERRELL could attend an appointment.

On or about September 2, 2013:

18.      At approximately 3:58 pm, defendant JUAN JARMON, R.C., and "Jay" discussed, via telephone, the operation of the JARMON/EDWARDS DTG. "Jay" told defendant JARMON that he had worked the previous night until 5pm when defendant RAHEEN BUTLER began his shift. Defendant JARMON directed "Jay" to cover defendant MICHAEL FERRELL's shift on Tuesday so defendant FERRELL could attend his appointment.

19.      At approximately 11:58 pm, defendants JUAN JARMON and RAHEEN BUTLER discussed, via telephone, the drug proceeds collected from the shift sellers, including "Jay" and defendant MICHAEL FERRELL.

On or about September 3, 2013:

20.      At approximately 6:49 pm, defendant JUAN JARMON ordered R.C. to stop using the phone to communicate with him.

21.      At approximately 6:52 pm, defendants JUAN JARMON and RAHEEN BUTLER discussed not using the phones to communicate. Defendant JARMON told defendant BUTLER, "Yeah, don't call me. That's what I was trying to tell these d*ck heads." Defendants JARMON and BUTLER also discussed defendant JARMON getting a pre-paid phone.

On or about September 4, 2013:

22.     At approximately 4:02 pm, defendant JUAN JARMON and R.C. discussed, via telephone, selling crack cocaine to a customer and that defendant JARMON would tell the customer to wait until R.C. cut and packaged the crack cocaine.

23.     At approximately 10:35 pm, defendants JUAN JARMON and DAMON EDWARDS discussed, via telephone, their whereabouts outside of the high-rise buildings in Blumberg, and defendant EDWARDS asked defendant JARMON if he was "running the smokers."

On or about September 5, 2013:

24.     At approximately 2:45 pm, on the 2400 block of West Oxford Street, Philadelphia, Pennsylvania, defendant JUAN JARMON distributed approximately 22.1 grams of crack cocaine to Person #8.

25.     At approximately 11:02 pm, defendant JUAN JARMON had a conversation, via telephone, with a male, unknown to the grand jury, during which the male expressed concern about police presence in the area.  Defendant JARMON responded that it would be easy to thwart detection by the police by moving their operations to the side of the building.

26.     On or about September 6, 2013, at approximately 1:11 pm, defendants JUAN JARMON and MICHAEL FERRELL discussed, via telephone, whether police were present in the security booth in Blumberg.

On or about September 7, 2013:

27.     At approximately 11:26 am, defendant JUAN JARMON arranged to purchase bulk crack or cocaine, via telephone, with a drug supplier.

28.     At approximately 4:41 pm, defendant JUAN JARMON informed R.C., via telephone, that he was directing a drug customer to R.C. for the purchase five bags of crack cocaine.

29.     At approximately 5:35 pm, defendants MICHAEL FERRELL and JUAN JARMON discussed, via telephone, the quantity of crack cocaine sold by defendant FERRELL during his shift.

30.     At approximately 7:15 pm, defendant JUAN JARMON and R.C. discussed, via telephone, an incoming drug customer. Defendant JARMON told R.C., "Yo, uhhh, [the customer] coming up. She got fifty, give her an extra one."

31.     On or about September 8, 2013, at approximately 4:32 pm, defendant JUAN JARMON and R.C. discussed, via telephone, one of their drug customers who was robbed while attempting to purchase drugs. Defendant JARMON and R.C. discussed the identity of the perpetrators, and defendant JARMON said he was going to "beat the sh*t out of them."

On or about September 9, 2013:

32.     At approximately 9:56 pm, defendant JUAN JARMON and R.C. discussed Person #9, known to the grand jury, who they believed told others that defendant JARMON and other DTG members sell drugs on the 18th floor of the Hemberger Building. Defendant JARMON told R.C., "Yeah, she don't understand how this sh*t go down around here. She's not from around, I'm gonna get her, I'm gonna get her hurt. I'm a really get her hurt. I'm really bout to get her hurt. I'm a find, I'm a get like six people real fast, and then I'm a bring them up there. I'm a make them stand in front of her door. . . . I'm getting six people to beat her the f*ck up tonight. Umm, she getting her *ss whopped tonight, I ain't playin'."

33.     In the Hemberger Building, defendant JUAN JARMON assaulted Person #9, striking her in the face.

34.     On or about September 10, 2013, at approximately 12:44 am, defendants JUAN JARMON and DAMON EDWARDS discussed, via telephone, the purchase price for a bulk quantity of crack or cocaine from a drug supplier.

On or about September 12, 2013:

35.     At approximately 12:26 am, defendant JUAN JARMON had a telephone conversation with a male, unknown to the grand jury, during which defendant JARMON expressed confidence in one shift seller, defendant DOTTIE GOOD, showing up for her shift.

36.     At approximately 1:09 am, defendant JUAN JARMON had a telephone conversation during which defendant JARMON identified himself as "Waterboy Yizzo" and told a passerby drug customer, "We got something up there popping on the 18th floor in this building," and directed him to the 18th floor hallway of the Hemberger Building.

37.     At approximately 1:44 am, defendant JUAN JARMON had a telephone conversation with a female, unknown to the grand jury, during which defendant JARMON expressed the need for him and defendant DAMON EDWARDS to be careful where they possessed and stored their firearms because of police presence in the area.

38.     At approximately 5:52 pm, defendants JUAN JARMON and MICHAEL FERRELL discussed, via telephone, the quantity of crack cocaine sold by defendant FERRELL during his shift.

39.     At approximately 6:34 pm, defendant JUAN JARMON had a telephone conversation during which he boasted about punching Person #9.

On or about September 13, 2013:

40.     At approximately 8:49 am, defendant JUAN JARMON and R.C. discussed, via telephone, the operations of the JARMON/EDWARDS DTG.  R.C. told defendant JARMON that defendant RAHEEN BUTLER had not yet shown up for his shift.  Defendant JARMON said that defendant BUTLER "got to be here on time" because R.C. had been working overtime and defendant JARMON already paid for a lookout.  Defendant JARMON told R.C. that when defendant DAMON EDWARDS returned, they are going to come up and talk to defendant BUTLER together.

41.     At approximately 8:56 pm, defendants JUAN JARMON and TAFT HARRIS discussed, via telephone, defendant HARRIS selling crack cocaine on the late shift.  Defendant JARMON told defendant HARRIS that he needed defendant HARRIS to start "price selling" within the next couple days.

42.     On or about September 16, 2013, at approximately 8:59 pm, defendant JUAN JARMON and R.C. discussed, via telephone, defendant JARMON "taxing" members of the JARMON/EDWARDS DTG who did not properly perform their duties.

On or about September 18, 2013:

43.     At approximately 7:18 pm, R.C. provided defendant JUAN JARMON, via telephone, with an update on the quantity of crack cocaine sold during R.C.'s shift.

44.     At approximately 8:16 pm, defendant JUAN JARMON arranged, via telephone, a drug transaction with a female customer.

45.     On or about September 19, 2013, at approximately 7:18 pm, defendant JUAN JARMON and R.C. discussed, via telephone, selling crack cocaine to a female customer.

On or about September 20, 2013:

46.     At approximately 2:00 pm, on the 18th floor of the Hemberger Building, defendant MICHAEL FERRELL distributed approximately 0.15 grams of crack cocaine to Person #10, known to the grand jury.

47.     At approximately 5:02 pm, defendant JUAN JARMON and R.C. discussed, via telephone, the use of Person #4, known to the grand jury, as a lookout and the quantity of crack cocaine sold by the shift sellers, including by defendant MICHAEL FERRELL.

48.     On or about September 21, 2013, at approximately 11:56 pm, defendant JUAN JARMON directed R.C. to call defendant DAMON EDWARDS when he needed to be resupplied with crack cocaine.

On or about September 22, 2013:

49.     At approximately 12:28 am, defendant JUAN JARMON and R.C. discussed, via telephone, the operations of the JARMON/EDWARDS DTG.  Defendant JARMON said that he and defendant DAMON EDWARDS were going over the drug proceeds from after R.C.'s shift and that the total was $1,720 but should have been $1,800, and they discussed the amounts paid to lookouts, including to Person #4.

50.     At approximately 6:51 pm, defendant JUAN JARMON and R.C. discussed, via telephone, the drug proceeds from after R.C.'s shift.  Defendant JARMON said that the total was $1,365 but should have been $1,500, and R.C. agreed to pay back defendant JARMON a portion of the proceeds.

51.     On or about September 23, 2013, at approximately 8:25 pm, R.C. sent defendant JUAN JARMON a text message, notifying defendant JARMON that his supply of crack cocaine

was running low.  At approximately 9:32 pm, R.C. confirmed to defendant JARMON, via telephone, that the drug supply was low.

On or about September 24, 2013:

52.    At approximately 6:38 pm, defendant JUAN JARMON and R.C. discussed, via telephone, whether R.C. needed more crack cocaine to sell.

53.    At approximately 10:05 pm, defendant JUAN JARMON and R.C. discussed, via telephone, the quantity of crack cocaine sold by the shift sellers.

On or about September 25, 2013:

54.    At approximately 12:01 am, defendant JUAN JARMON complained to R.C. about a female lookout and how her child care responsibilities interfered with her duties to the JARMON/EDWARDS DTG.

55.    At approximately 4:01 pm, defendant JUAN JARMON and R.C. discussed, via telephone, the quantity of crack cocaine sold by the shift sellers and passed to defendant MICHAEL FERRELL on his shift.

On or about September 26, 2013:

56.    At approximately 6:10 pm, R.C. sent defendant JUAN JARMON a text message asking defendant JARMON to "find me a lookout."

57.    At approximately 9:48 pm, defendant JUAN JARMON and R.C. discussed, via telephone, paying a female lookout.  R.C. told defendant JARMON they paid the lookout $35, and defendant JARMON responded that "the b*tch didn't even deserve that, dog.  The b*tch shut the sh*t down at five o'clock."

On or about September 27, 2013:

58.    At approximately 4:50 pm, defendant JUAN JARMON and R.C. discussed, via telephone, calling defendant STEPHEN DAWKINS to assist during R.C.'s shift because of the high volume of drug customers.

59.    At approximately 5:23 pm, defendant JUAN JARMON directed R.C. to use a lookout during his shift, telling him, "I just had this conversation with . . . with everybody about that sh*t man, like, ain't nobody going to trap without no lookouts." Defendant JARMON said, "I'm going to have to grind myself, 'cause I'm not keep paying people for free dog."

60.    On or about September 28, 2013, at approximately 12:16 am, defendant JUAN JARMON and R.C. discussed, via telephone, defendant DEREK FERNANDES acting as lookout during R.C.'s shift. R.C. told defendant JARMON, "I'm glad [FERNANDES] staying out there so I know the building protected."

61.    On or about September 29, 2013, at approximately 5:03 pm, defendant DAMON EDWARDS advised R.C., via telephone, that the elevators were not working so he was relocating to a lower floor. R.C. told defendant EDWARDS that he was providing a phone to defendant STEPHEN DAWKINS and would have defendant DAWKINS redirect customers to R.C. on the lower floor.

On or about September 30, 2013:

62.    At approximately 3:00 pm, on the 2400 block of West Oxford Street, Philadelphia, Pennsylvania, defendant JUAN JARMON and Person #11, known to the grand jury, distributed, and aided and abetted the distribution of, approximately three-quarters of an ounce of a substance purported to be crack cocaine to Person #8.

63.    At approximately 10:18 pm, defendant JUAN JARMON asked a female, unknown to the grand jury, via telephone, to stash drugs for him.

64.    In or around October 2013, defendant GENE WILSON inquired about becoming a lookout for the JARMON/EDWARDS DTG.

On or about October 1, 2013:

65.    At approximately 10:43 pm, defendants JUAN JARMON and MICHAEL FERRELL discussed, via telephone, the quantity of crack cocaine and drug proceeds passed to defendant FERRELL from defendant DEREK FERNANDES.

66.    At approximately 11:06 pm, defendant JUAN JARMON warned R.C., via telephone, that law enforcement was about to enter the Hemberger Building and that he and defendants DAMON EDWARDS and STEPHEN DAWKINS were sitting outside the building.

On or about October 3, 2013:

67.    At approximately 10:45 pm, defendant JUAN JARMON informed R.C., via telephone, that the elevators were not working and that defendant JARMON had money from drug customers.

68.    At approximately 10:54 pm, defendant JUAN JARMON had a telephone conversation with a male, unknown to the grand jury, during which the male told defendant JARMON, "You gotta come do something about this elevator man.  Your customers coming across the street, man."  Defendant JARMON responded that he would direct his shift seller, R.C., to come downstairs with the crack cocaine.

69.    On or about October 4, 2013, at approximately 1:31 am, defendant JUAN JARMON told a female drug customer, via telephone, that if she wanted additional drugs, she could "work it off."

70.     On or about October 5, 2013, at approximately 1:42 am, defendant JUAN JARMON directed an incoming drug customer to defendant TAFT HARRIS.

71.     On or about October 10, 2013, at approximately 12:42 am, defendant JUAN JARMON and R.C. discussed, via telephone, the quantity of crack cocaine that R.C. had left to sell.

72.     On or about October 14, 2013, at approximately 9:00 pm, defendant MICHAEL FERRELL asked defendant JUAN JARMON, via telephone, if this week was the "last week grinding" for R.C., telling defendant JARMON that defendant STEVEN THOMPSON wanted to take R.C.'s spot as shift seller.

On or about October 15, 2013:

73.     At approximately 11:15 pm, a drug customer asked defendant JUAN JARMON, via telephone, if he could purchase four bags of crack cocaine.

74.     At approximately 11:45 pm, defendant JUAN JARMON and R.C. discussed, via telephone, defendant DEREK FERNANDES falling asleep while acting as lookout during R.C.'s shift.

75.     At approximately 11:47 pm, defendant JUAN JARMON directed defendant TAFT HARRIS not to pay the lookouts until the shift is over, telling defendant HARRIS, "I'm trying to get this sh*t to pick up for you all, so you can make more money man."

76.     At approximately 11:56 pm, R.C. asked defendant JUAN JARMON, via telephone, whether the Hemberger Building was being "protected."

77.     On or about October 16, 2013, between 11:50 pm and 11:55 pm, defendant JUAN JARMON and R.C. exchanged text messages about R.C. providing defendant JARMON with drug proceeds.

On or about October 18, 2013:

78.     At approximately 12:16 am, defendants JUAN JARMON and TAFT HARRIS discussed, via telephone, the operations of the JARMON/EDWARDS DTG.  Defendant HARRIS confirmed that defendant STEPHEN DAWKINS was acting as lookout during his overnight shift, and defendant JARMON directed defendant HARRIS to pay defendant DAWKINS $20 for the shift.

79.     At approximately 8:10 pm, defendant JUAN JARMON and R.C. discussed, via telephone, the quantity of crack cocaine R.C. had left to sell.  Defendant JARMON told R.C. to call defendant DAMON EDWARDS' phone when R.C. was ready for more drugs.

80.     On or about October 20, 2013, at approximately 12:41 am, defendants DAMON EDWARDS and TAFT HARRIS discussed, via telephone, the quantity of crack cocaine to be received by defendant HARRIS for his shift.

On or about October 23, 2013:

81.     On the 18th floor of the Hemberger Building, R.C. distributed approximately 0.39 grams of crack cocaine to Person #10.

82.     At approximately 12:09 pm, defendant JUAN JARMON and R.C. discussed, via telephone, the quantity of crack cocaine sold by the shift sellers.  R.C. told defendant JARMON that the seller on the overnight shift, "Jay," sold $250 worth of crack cocaine and was already paid.  Defendant JARMON responded, "Man, you can't pay that n*gger if he ain't doing nothing.  Two fifty ain't nothing, man!"  Defendant JARMON directed R.C. to put "Jay" on the phone, and defendant JARMON told "Jay" that he would give him one more chance that night.

83.     At approximately 12:22 pm, defendant JUAN JARMON told "Jay," via telephone, "You can't take no more money until it's time to get paid."

On or about October 24, 2013:

84.    At approximately 10:53 am, defendant JUAN JARMON had a telephone conversation with Person #5, known to the grand jury, who had been approached about allowing JARMON/EDWARDS DTG members to use her apartment on the 18th floor of the Hemberger Building as a hideout from police.  When Person #5 expressed to defendant JARMON concern for her children's safety, defendant JARMON told her that defendant MICHAEL FERRELL and others just needed a place to walk into if police entered the building.

85.    At approximately 11:23 pm, defendants JUAN JARMON and MICHAEL FERRELL discussed, via telephone, the quantity of crack cocaine sold by defendant FERRELL during his shift.

On or about October 28, 2013:

86.    At approximately 11:48 am, defendants JUAN JARMON and MICHAEL FERRELL discussed, via telephone, missing out on a large volume of drug sales because defendant FERRELL was unable to reach R.C. to resupply.

87.    At approximately 12:30 pm, defendants JUAN JARMON and MICHAEL FERRELL discussed, via telephone, the quantity of crack cocaine sold by defendant FERRELL during his shift.

88.    On or about October 28, 2013, at approximately 5:16 pm, defendant DAMON EDWARDS used defendant JUAN JARMON's telephone to warn Person #1, known to the grand jury, that four police vehicles were circling the area.

89.    On or about October 31, 2013, on the 18th floor of the Hemberger Building, defendant TAFT HARRIS distributed approximately 0.28 grams of crack cocaine to Person #10.

90.    On or about November 8, 2013, on the 18th floor of the Hemberger Building, R.C. distributed approximately 0.39 grams of crack cocaine to Person #10.

91.    On or about December 12, 2013, on the 18th floor of the Hemberger Building, R.C. distributed approximately 0.40 grams of crack cocaine to Person #10.

92.    On or about December 15, 2013, at approximately 4:49 pm, defendant JUAN JARMON used defendant DAMON EDWARDS' telephone to call R.C. and ask him who was acting as "lookout" during R.C.'s shift.  R.C. responded that defendant STEPHEN DAWKINS was the lookout.

On or about December 24, 2013:

93.    At approximately 1:35 pm, defendants DAMON EDWARDS and EDWARD STINSON discussed, via telephone, sales of crack cocaine on the 18th floor of the Hemberger Building.

94.    At approximately 2:12 pm, defendants JUAN JARMON and DAMON EDWARDS discussed, via telephone, the elevator being down in the Hemberger Building the night before, and its impact on crack cocaine sales on the 18th floor.

On or about January 1, 2014:

95.    At approximately 12:59 pm, defendants JUAN JARMON and DAMON EDWARDS discussed, via telephone, someone pulling the fire alarm and stopping the elevators, which forced their shift seller, defendant TAFT HARRIS, to walk up the steps.  Defendant JARMON told defendant EDWARDS that he was trying to contact defendant EDWARD STINSON about putting a seller on the third floor.

96.     At approximately 1:56 pm, defendant DAMON EDWARDS told defendant DONTA EDWARDS, via telephone, that the "law [was] out" and warned him "to be extra careful now."

97.     On or about January 2, 2014, at approximately 9:54 pm, defendant DAMON EDWARDS asked R.C., via telephone, whether his drug supply was low.

98.     On or about January 6, 2014, at approximately 11:20 pm, defendant DAMON EDWARDS discussed, via telephone, purchasing a quarter pound of bulk crack or cocaine for $1,100 from a drug supplier.

99.     On or about January 14, 2014, at approximately 5:21 pm, defendant DONTA EDWARDS described to defendant DAMON EDWARDS, via telephone, the poor quality of a recent batch of crack cocaine being sold by the JARMON/EDWARDS DTG.

100.     On or about January 15, 2014, at approximately 12:37 am, defendant DAMON EDWARDS asked R.C., via telephone, for an update on the level of crack cocaine sales during his shift.

On or about January 24, 2014:

101.     At approximately 11:40 am, defendant GENE WILSON, who resided in Apartment 1406 of the Judson Building, directed Person #10 to his apartment, and Person #10 purchased approximately 0.44 grams of crack cocaine.  Defendant WILSON then escorted Person #10 to the elevator and out of the building.

102.     At approximately 10:41 pm, defendant JUAN JARMON provided defendant DAMON EDWARDS, via telephone, with an update on the shift sellers and supply of crack cocaine.

103.    On or about February 3, 2014, at approximately 12:18 pm, defendant EDWARD

STINSON informed defendant DAMON EDWARDS, via telephone, that he was with R.C.

during R.C.'s shift the previous night.

104.    On or about February 8, 2014, at approximately 10:12 pm, defendant DAMON

EDWARDS warned R.C., via telephone, that the police were entering the Hemberger Building.

105.    On or about February 11, 2014, on the 18th floor of the Hemberger Building, R.C.

distributed approximately 0.17 grams of crack cocaine to Person #10.

On or about February 18, 2014:

106.    On the 18th floor of the Hemberger Building, R.C. distributed approximately 0.35

grams of crack cocaine to Person #10.

107.    Inside his apartment, Apartment 1805 in the Hemberger Building, R.C.

maintained and possessed approximately 2 grams of crack cocaine, 5.2 grams of marijuana, and

$567 in drug proceeds.

108.    At approximately 6:52 pm, defendant EDWARD STINSON warned defendant

DAMON EDWARDS, via telephone, that "all these f*cking cops out there" and were about to

enter the Hemberger Building.

109.    On or about February 19, 2014, at approximately 12:25 pm, following the arrest

of R.C., defendant DAMON EDWARDS had a telephone conversation with defendant

STINSON during which defendant EDWARDS said that R.C. would need to show them his

arrest paperwork.

110.    On or about March 5, 2014, on the 18th floor of the Hemberger Building,

defendant STEVEN THOMPSON distributed approximately 0.41 grams of crack cocaine to

Person #10.

111.    On or about April 11, 2014, defendant DEREK FERNANDES arranged a drug transaction for Person #10 from inside defendant GENE WILSON's apartment, Apartment 1406 in the Judson Building, and then directed and escorted Person #10 to the 15th floor of the Judson Building, where Person #10 purchased approximately 0.35 grams of crack cocaine from a person unknown to the grand jury.

112.    On or about April 24, 2014, Person #10 purchased four bags of a substance purported to be crack cocaine from inside defendant GENE WILSON's apartment, Apartment 1406 in the Judson Building.

113.    On or about September 2, 2014, at approximately 2:16 pm, defendant EDWARD STINSON, while incarcerated in state prison, directed E.P., known to the grand jury and charged elsewhere, to tell defendants JUAN JARMON and DAMON EDWARDS that defendant STINSON needs them to "give up the money" owed to defendant STINSON from drug sales.

All in violation of Title 21, United States Code, Section 846.

## COUNT TWO

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about October 3, 2012, in Philadelphia, in the Eastern District of Pennsylvania, defendants

**EDWARD STINSON,**
**a/k/a "E-Black," and**
**JUAN JARMON,**
**a/k/a "J,"**
**a/k/a "Yizzo,"**

knowingly and intentionally used a communication facility, that is, a telephone, in facilitating a drug felony, namely, conspiracy to distribute cocaine base ("crack"), in violation of Title 21, United States Code, Section 846, in that defendants STINSON and JARMON used the telephone to discuss the operation of a crack cocaine distribution business, and defendant STINSON gave permission to defendant JARMON to operate on the 18th floor of the Hemberger Building, telling defendant JARMON that he could "make all the money off the building, right now."

In violation of Title 21, United States Code, Section 843(b).

## COUNT THREE

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about April 18, 2013, in Philadelphia, in the Eastern District of Pennsylvania,

defendant

**DOTTIE GOOD,**
**a/k/a "Dreds,"**
**a/k/a "Dots,"**

knowingly and intentionally distributed approximately 0.22 grams of a mixture and substance

containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C).

## COUNT FOUR

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about April 18, 2013, in Philadelphia, in the Eastern District of Pennsylvania, defendant

**DOTTIE GOOD,**
**a/k/a "Dreds,"**
**a/k/a "Dots,"**

knowingly and intentionally distributed approximately 0.22 grams of a mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance, within 1,000 feet of the real property comprising the Norman Blumberg Apartment Complex, a housing facility owned by the Philadelphia Housing Authority, a public housing authority, located at 2311 W. Jefferson Street, Philadelphia, Pennsylvania, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C).

In violation of Title 21, United States Code, Section 860(a).

## COUNT FIVE

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about April 25, 2013, in Philadelphia, in the Eastern District of Pennsylvania,

defendant

**DOTTIE GOOD,**
**a/k/a "Dreds,"**
**a/k/a "Dots,"**

knowingly and intentionally distributed approximately 0.61 grams of a mixture and substance

containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C).

## COUNT SIX

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about April 25, 2013, in Philadelphia, in the Eastern District of Pennsylvania,

defendant

**DOTTIE GOOD,**
**a/k/a "Dreds,"**
**a/k/a "Dots,"**

knowingly and intentionally distributed approximately 0.61 grams of a mixture and substance

containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance,

within 1,000 feet of the real property comprising the Norman Blumberg Apartment Complex, a

housing facility owned by the Philadelphia Housing Authority, a public housing authority,

located at 2311 W. Jefferson Street, Philadelphia, Pennsylvania, in violation of Title 21, United

States Code, Section 841(a)(1), (b)(1)(C).

In violation of Title 21, United States Code, Section 860(a).

## COUNT SEVEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about May 3, 2013, in Philadelphia, in the Eastern District of Pennsylvania, defendant

**JUAN JARMON,**
**a/k/a "J,"**
**a/k/a "Yizzo,"**

knowingly and intentionally distributed approximately 2.1 grams of a mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C).

## COUNT EIGHT

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about May 3, 2013, in Philadelphia, in the Eastern District of Pennsylvania, defendant

**JUAN JARMON,**
**a/k/a "J,"**
**a/k/a "Yizzo,"**

knowingly and intentionally distributed approximately 2.1 grams of a mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance, within 1,000 feet of the real property comprising the Norman Blumberg Apartment Complex, a housing facility owned by the Philadelphia Housing Authority, a public housing authority, located at 2311 W. Jefferson Street, Philadelphia, Pennsylvania, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C).

In violation of Title 21, United States Code, Section 860(a).

## COUNT NINE

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about May 8, 2013, in Philadelphia, in the Eastern District of Pennsylvania,

defendant

**JUAN JARMON,**
**a/k/a "J,"**
**a/k/a "Yizzo,"**

knowingly and intentionally distributed approximately 4.9 grams of a mixture and substance

containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C).

## COUNT TEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about May 8, 2013, in Philadelphia, in the Eastern District of Pennsylvania, defendant

**JUAN JARMON,**
**a/k/a "J,"**
**a/k/a "Yizzo,"**

knowingly and intentionally distributed approximately 4.9 grams of a mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance, within 1,000 feet of the real property comprising the Norman Blumberg Apartment Complex, a housing facility owned by the Philadelphia Housing Authority, a public housing authority, located at 2311 W. Jefferson Street, Philadelphia, Pennsylvania, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C).

In violation of Title 21, United States Code, Section 860(a).

## COUNT ELEVEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about May 17, 2013, in Philadelphia, in the Eastern District of Pennsylvania, defendant

**JUAN JARMON,**
**a/k/a "J,"**
**a/k/a "Yizzo,"**

knowingly and intentionally distributed approximately 8.9 grams of a mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C).

### COUNT TWELVE

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about May 17, 2013, in Philadelphia, in the Eastern District of Pennsylvania, defendant

### JUAN JARMON,
### a/k/a "J,"
### a/k/a "Yizzo,"

knowingly and intentionally distributed approximately 8.9 grams of a mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance, within 1,000 feet of the real property comprising the Norman Blumberg Apartment Complex, a housing facility owned by the Philadelphia Housing Authority, a public housing authority, located at 2311 W. Jefferson Street, Philadelphia, Pennsylvania, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C).

In violation of Title 21, United States Code, Section 860(a).

## COUNT THIRTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about June 11, 2013, in Philadelphia, in the Eastern District of Pennsylvania,

defendant

**JUAN JARMON,**
**a/k/a "J,"**
**a/k/a "Yizzo,"**

knowingly and intentionally distributed approximately 22.7 grams of a mixture and substance

containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C).

## COUNT FOURTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about June 11, 2013, in Philadelphia, in the Eastern District of Pennsylvania, defendant

**JUAN JARMON,**
**a/k/a "J,"**
**a/k/a "Yizzo,"**

knowingly and intentionally distributed approximately 22.7 grams of a mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance, within 1,000 feet of the real property comprising the Norman Blumberg Apartment Complex, a housing facility owned by the Philadelphia Housing Authority, a public housing authority, located at 2311 W. Jefferson Street, Philadelphia, Pennsylvania, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C).

In violation of Title 21, United States Code, Section 860(a).

## **COUNT FIFTEEN**

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about August 2, 2013, in Philadelphia, in the Eastern District of Pennsylvania, defendant

**JUAN JARMON,**
**a/k/a "J,"**
**a/k/a "Yizzo,"**

knowingly and intentionally distributed approximately 16.1 grams of a mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C).

## COUNT SIXTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about August 2, 2013, in Philadelphia, in the Eastern District of Pennsylvania, defendant

**JUAN JARMON,**
**a/k/a "J,"**
**a/k/a "Yizzo,"**

knowingly and intentionally distributed approximately 16.1 grams of a mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance, within 1,000 feet of the real property comprising the Norman Blumberg Apartment Complex, a housing facility owned by the Philadelphia Housing Authority, a public housing authority, located at 2311 W. Jefferson Street, Philadelphia, Pennsylvania, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C).

In violation of Title 21, United States Code, Section 860(a).

## COUNT SEVENTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about August 14, 2013, in Philadelphia, in the Eastern District of Pennsylvania, defendants

**JUAN JARMON,**
**a/k/a "J,"**
**a/k/a "Yizzo," and**
**DAMON EDWARDS,**
**a/k/a "Boo,"**
**a/k/a "Boo-Boo,"**

knowingly and intentionally distributed, and aided and abetted the distribution of, approximately 6.1 grams of a mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C), and Title 18, United States Code, Section 2.

## COUNT EIGHTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about August 14, 2013, in Philadelphia, in the Eastern District of Pennsylvania, defendants

**JUAN JARMON,**
**a/k/a "J,"**
**a/k/a "Yizzo," and**
**DAMON EDWARDS,**
**a/k/a "Boo,"**
**a/k/a "Boo-Boo,"**

knowingly and intentionally distributed, and aided and abetted the distribution of, approximately 6.1 grams of a mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance, within 1,000 feet of the real property comprising the Norman Blumberg Apartment Complex, a housing facility owned by the Philadelphia Housing Authority, a public housing authority, located at 2311 W. Jefferson Street, Philadelphia, Pennsylvania, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C), and Title 18, United States Code, Section 2.

In violation of Title 21, United States Code, Section 860(a).

## COUNT NINETEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about September 2, 2013, at approximately 11:58 pm, in Philadelphia, in the

Eastern District of Pennsylvania, defendants

**JUAN JARMON,**
**a/k/a "J,"**
**a/k/a "Yizzo," and**
**RAHEEN BUTLER,**
**a/k/a "Raheem,"**
**a/k/a "Riddles,"**
**a/k/a "Ra-Ra,"**

knowingly and intentionally used a communication facility, that is, a telephone, in facilitating a

drug felony, namely, conspiracy to distribute cocaine base ("crack"), in violation of Title 21,

United States Code, Section 846, in that defendants JARMON and BUTLER used the telephone

to discuss drug proceeds collected from shift sellers engaged in a crack distribution business.

In violation of Title 21, United States Code, Section 843(b).

## COUNT TWENTY

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about September 4, 2013, at approximately 4:02 pm, in Philadelphia, in the Eastern District of Pennsylvania, defendant

**JUAN JARMON,**
**a/k/a "J,"**
**a/k/a "Yizzo,"**

and R.C., charged elsewhere, knowingly and intentionally possessed with intent to distribute, and aided and abetted the possession with intent to distribute of, a mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C), and Title 18, United States Code, Section 2.

## COUNT TWENTY ONE

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about September 4, 2013, at approximately 4:02 pm, in Philadelphia, in the Eastern District of Pennsylvania, defendant

**JUAN JARMON,**
**a/k/a "J,"**
**a/k/a "Yizzo,"**

and R.C., charged elsewhere, knowingly and intentionally possessed with intent to distribute, and aided and abetted the possession with intent to distribute of, a mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance, within 1,000 feet of the real property comprising the Norman Blumberg Apartment Complex, a housing facility owned by the Philadelphia Housing Authority, a public housing authority, located at 2311 W. Jefferson Street, Philadelphia, Pennsylvania, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C), and Title 18, United States Code, Section 2.

In violation of Title 21, United States Code, Section 860(a).

## COUNT TWENTY TWO

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about September 5, 2013, in Philadelphia, in the Eastern District of Pennsylvania, defendant

**JUAN JARMON,**
**a/k/a "J,"**
**a/k/a "Yizzo,"**

knowingly and intentionally distributed approximately 22.1 grams of a mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C).

## COUNT TWENTY THREE

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about September 5, 2013, in Philadelphia, in the Eastern District of Pennsylvania, defendant

**JUAN JARMON,**
**a/k/a "J,"**
**a/k/a "Yizzo,"**

knowingly and intentionally distributed approximately 22.1 grams of a mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance, within 1,000 feet of the real property comprising the Norman Blumberg Apartment Complex, a housing facility owned by the Philadelphia Housing Authority, a public housing authority, located at 2311 W. Jefferson Street, Philadelphia, Pennsylvania, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C).

In violation of Title 21, United States Code, Section 860(a).

## COUNT TWENTY FOUR

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about September 7, 2013, at approximately 4:41 pm, in Philadelphia, in the Eastern District of Pennsylvania, defendant

**JUAN JARMON,**
**a/k/a "J,"**
**a/k/a "Yizzo,"**

and R.C., charged elsewhere, knowingly and intentionally possessed with intent to distribute, and aided and abetted the possession with intent to distribute of, a mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C), and Title 18, United States Code, Section 2.

## COUNT TWENTY FIVE

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about September 7, 2013, at approximately 4:41 pm, in Philadelphia, in the Eastern District of Pennsylvania, defendant

**JUAN JARMON,**
**a/k/a "J,"**
**a/k/a "Yizzo,"**

and R.C., charged elsewhere, knowingly and intentionally possessed with intent to distribute, and aided and abetted the possession with intent to distribute of, a mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance, within 1,000 feet of the real property comprising the Norman Blumberg Apartment Complex, a housing facility owned by the Philadelphia Housing Authority, a public housing authority, located at 2311 W. Jefferson Street, Philadelphia, Pennsylvania, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C), and Title 18, United States Code, Section 2.

In violation of Title 21, United States Code, Section 860(a).

## COUNT TWENTY SIX

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about September 7, 2013, at approximately 7:15 pm, in Philadelphia, in the Eastern District of Pennsylvania, defendant

**JUAN JARMON,**
**a/k/a "J,"**
**a/k/a "Yizzo,"**

and R.C., charged elsewhere, knowingly and intentionally possessed with intent to distribute, and aided and abetted the possession with intent to distribute of, a mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C), and Title 18, United States Code, Section 2.

## COUNT TWENTY SEVEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about September 7, 2013, at approximately 7:15 pm, in Philadelphia, in the Eastern District of Pennsylvania, defendant

**JUAN JARMON,**
**a/k/a "J,"**
**a/k/a "Yizzo,"**

and R.C., charged elsewhere, knowingly and intentionally possessed with intent to distribute, and aided and abetted the possession with intent to distribute of, a mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance, within 1,000 feet of the real property comprising the Norman Blumberg Apartment Complex, a housing facility owned by the Philadelphia Housing Authority, a public housing authority, located at 2311 W. Jefferson Street, Philadelphia, Pennsylvania, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C), and Title 18, United States Code, Section 2.

In violation of Title 21, United States Code, Section 860(a).

## COUNT TWENTY EIGHT

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about September 12, 2013, at approximately 1:09 am, in Philadelphia, in the

Eastern District of Pennsylvania, defendant

**JUAN JARMON,**
**a/k/a "J,"**
**a/k/a "Yizzo,"**

knowingly and intentionally possessed with intent to distribute, and aided and abetted the

possession with intent to distribute of, a mixture and substance containing a detectable amount of

cocaine base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C), and Title 18,

United States Code, Section 2.

## COUNT TWENTY NINE

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about September 12, 2013, at approximately 1:09 am, in Philadelphia, in the Eastern District of Pennsylvania, defendant

**JUAN JARMON,**
**a/k/a "J,"**
**a/k/a "Yizzo,"**

knowingly and intentionally possessed with intent to distribute, and aided and abetted the possession with intent to distribute of, a mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance, within 1,000 feet of the real property comprising the Norman Blumberg Apartment Complex, a housing facility owned by the Philadelphia Housing Authority, a public housing authority, located at 2311 W. Jefferson Street, Philadelphia, Pennsylvania, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C), and Title 18, United States Code, Section 2.

In violation of Title 21, United States Code, Section 860(a).

## COUNT THIRTY

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about September 18, 2013, at approximately 8:16 pm, in Philadelphia, in the

Eastern District of Pennsylvania, defendant

**JUAN JARMON,**
**a/k/a "J,"**
**a/k/a "Yizzo,"**

knowingly and intentionally possessed with intent to distribute, and aided and abetted the

possession with intent to distribute of, a mixture and substance containing a detectable amount of

cocaine base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C), and Title 18,

United States Code, Section 2.

## COUNT THIRTY ONE

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about September 18, 2013, at approximately 8:16 pm, in Philadelphia, in the

Eastern District of Pennsylvania, defendant

**JUAN JARMON,**
**a/k/a "J,"**
**a/k/a "Yizzo,"**

knowingly and intentionally possessed with intent to distribute, and aided and abetted the

possession with intent to distribute of, a mixture and substance containing a detectable amount of

cocaine base ("crack"), a Schedule II controlled substance, within 1,000 feet of the real property

comprising the Norman Blumberg Apartment Complex, a housing facility owned by the

Philadelphia Housing Authority, a public housing authority, located at 2311 W. Jefferson Street,

Philadelphia, Pennsylvania, in violation of Title 21, United States Code, Section 841(a)(1),

(b)(1)(C), and Title 18, United States Code, Section 2.

In violation of Title 21, United States Code, Section 860(a).

## COUNT THIRTY TWO

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about September 19, 2013, at approximately 7:18 pm, in Philadelphia, in the

Eastern District of Pennsylvania, defendant

**JUAN JARMON,**
**a/k/a "J,"**
**a/k/a "Yizzo,"**

and R.C., charged elsewhere, knowingly and intentionally possessed with intent to distribute, and

aided and abetted the possession with intent to distribute of, a mixture and substance containing a

detectable amount of cocaine base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C), and Title 18,

United States Code, Section 2.

## COUNT THIRTY THREE

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about September 19, 2013, at approximately 7:18 pm, in Philadelphia, in the

Eastern District of Pennsylvania, defendant

**JUAN JARMON,**
**a/k/a "J,"**
**a/k/a "Yizzo,"**

and R.C., charged elsewhere, knowingly and intentionally possessed with intent to distribute, and

aided and abetted the possession with intent to distribute of, a mixture and substance containing a

detectable amount of cocaine base ("crack"), a Schedule II controlled substance, within 1,000

feet of the real property comprising the Norman Blumberg Apartment Complex, a housing

facility owned by the Philadelphia Housing Authority, a public housing authority, located at

2311 W. Jefferson Street, Philadelphia, Pennsylvania, in violation of Title 21, United States

Code, Section 841(a)(1), (b)(1)(C), and Title 18, United States Code, Section 2.

In violation of Title 21, United States Code, Section 860(a).

## COUNT THIRTY FOUR

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about September 20, 2013, in Philadelphia, in the Eastern District of Pennsylvania, defendant

**MICHAEL FERRELL,**
**a/k/a "Mike,"**

knowingly and intentionally distributed approximately 0.15 grams of a mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C).

## COUNT THIRTY FIVE

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about September 20, 2013, in Philadelphia, in the Eastern District of Pennsylvania, defendant

### MICHAEL FERRELL,
### a/k/a "Mike,"

knowingly and intentionally distributed approximately 0.15 grams of a mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance, within 1,000 feet of the real property comprising the Norman Blumberg Apartment Complex, a housing facility owned by the Philadelphia Housing Authority, a public housing authority, located at 2311 W. Jefferson Street, Philadelphia, Pennsylvania, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C).

In violation of Title 21, United States Code, Section 860(a).

## COUNT THIRTY SIX

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about October 18, 2013, at approximately 8:10 pm, in Philadelphia, in the Eastern District of Pennsylvania, defendants

**JUAN JARMON,**
**a/k/a "J,"**
**a/k/a "Yizzo,"**
**DAMON EDWARDS,**
**a/k/a "Boo,"**
**a/k/a "Boo-Boo,"**

and R.C., charged elsewhere, knowingly and intentionally possessed with intent to distribute, and aided and abetted the possession with intent to distribute of, a mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C), and Title 18, United States Code, Section 2.

## COUNT THIRTY SEVEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about October 18, 2013, at approximately 8:10 pm, in Philadelphia, in the Eastern

District of Pennsylvania, defendants

**JUAN JARMON,**
a/k/a "J,"
a/k/a "Yizzo,"
**DAMON EDWARDS,**
a/k/a "Boo,"
a/k/a "Boo-Boo,"

and R.C., charged elsewhere, knowingly and intentionally possessed with intent to distribute, and

aided and abetted the possession with intent to distribute of, a mixture and substance containing a

detectable amount of cocaine base ("crack"), a Schedule II controlled substance, within 1,000

feet of the real property comprising the Norman Blumberg Apartment Complex, a housing

facility owned by the Philadelphia Housing Authority, a public housing authority, located at

2311 W. Jefferson Street, Philadelphia, Pennsylvania, in violation of Title 21, United States

Code, Section 841(a)(1), (b)(1)(C), and Title 18, United States Code, Section 2.

In violation of Title 21, United States Code, Section 860(a).

## COUNT THIRTY EIGHT

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about October 31, 2013, in Philadelphia, in the Eastern District of Pennsylvania,

defendant

**TAFT HARRIS,**
**a/k/a "Taff,"**
**a/k/a "Taz,"**

knowingly and intentionally distributed approximately 0.28 grams of a mixture and substance

containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C).

## COUNT THIRTY NINE

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about October 31, 2013, in Philadelphia, in the Eastern District of Pennsylvania, defendant

**TAFT HARRIS,**
**a/k/a "Taff,"**
**a/k/a "Taz,"**

knowingly and intentionally distributed approximately 0.28 grams of a mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance, within 1,000 feet of the real property comprising the Norman Blumberg Apartment Complex, a housing facility owned by the Philadelphia Housing Authority, a public housing authority, located at 2311 W. Jefferson Street, Philadelphia, Pennsylvania, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C).

In violation of Title 21, United States Code, Section 860(a).

## COUNT FORTY

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about January 14, 2014, at approximately 5:21 pm, in Philadelphia, in the Eastern

District of Pennsylvania, defendant

**DONTA EDWARDS,**
**a/k/a "Boog,"**

knowingly and intentionally possessed with intent to distribute a mixture and substance

containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C).

## COUNT FORTY ONE

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about January 14, 2014, at approximately 5:21 pm, in Philadelphia, in the Eastern District of Pennsylvania, defendant

### DONTA EDWARDS,
### a/k/a "Boog,"

knowingly and intentionally possessed with intent to distribute a mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance, within 1,000 feet of the real property comprising the Norman Blumberg Apartment Complex, a housing facility owned by the Philadelphia Housing Authority, a public housing authority, located at 2311 W. Jefferson Street, Philadelphia, Pennsylvania, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C).

In violation of Title 21, United States Code, Section 860(a).

## COUNT FORTY TWO

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about January 24, 2014, in Philadelphia, in the Eastern District of Pennsylvania, defendant

**GENE WILSON,**
**a/k/a "Big Gene,"**

knowingly and intentionally distributed, and aided and abetted the distribution of, approximately 0.44 grams of a mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C), and Title 18, United States Code, Section 2.

## COUNT FORTY THREE

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about January 24, 2014, in Philadelphia, in the Eastern District of Pennsylvania, defendant

### GENE WILSON,
### a/k/a "Big Gene,"

knowingly and intentionally distributed, and aided and abetted the distribution of, approximately 0.44 grams of a mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance, within 1,000 feet of the real property comprising the Norman Blumberg Apartment Complex, a housing facility owned by the Philadelphia Housing Authority, a public housing authority, located at 2311 W. Jefferson Street, Philadelphia, Pennsylvania, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C), and Title 18, United States Code, Section 2.

In violation of Title 21, United States Code, Section 860(a).

## COUNT FORTY FOUR

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about March 5, 2014, in Philadelphia, in the Eastern District of Pennsylvania,

defendant

**STEVEN THOMPSON,**
**a/k/a "Tall Steve,"**

knowingly and intentionally distributed approximately 0.41 grams of a mixture and substance

containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C), and Title 18,

United States Code, Section 2.

## COUNT FORTY FIVE

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about March 5, 2014, in Philadelphia, in the Eastern District of Pennsylvania, defendant

**STEVEN THOMPSON,
a/k/a "Tall Steve,"**

knowingly and intentionally distributed approximately 0.41 grams of a mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance, within 1,000 feet of the real property comprising the Norman Blumberg Apartment Complex, a housing facility owned by the Philadelphia Housing Authority, a public housing authority, located at 2311 W. Jefferson Street, Philadelphia, Pennsylvania, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C), and Title 18, United States Code, Section 2.

In violation of Title 21, United States Code, Section 860(a).

## COUNT FORTY SIX

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about April 11, 2014, in Philadelphia, in the Eastern District of Pennsylvania,

defendant

**DEREK FERNANDES,**
**a/k/a "Reds,"**
**a/k/a "Mark Carr,"**

knowingly and intentionally distributed, and aided and abetted the distribution of, approximately

0.35 grams of a mixture and substance containing a detectable amount of cocaine base ("crack"),

a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C), and Title 18,

United States Code, Section 2.

## COUNT FORTY SEVEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about April 11, 2014, in Philadelphia, in the Eastern District of Pennsylvania,

defendant

**DEREK FERNANDES,**
**a/k/a "Reds,"**
**a/k/a "Mark Carr,"**

knowingly and intentionally distributed, and aided and abetted the distribution of, approximately

0.35 grams of a mixture and substance containing a detectable amount of cocaine base ("crack"),

a Schedule II controlled substance, within 1,000 feet of the real property comprising the Norman

Blumberg Apartment Complex, a housing facility owned by the Philadelphia Housing Authority,

located at 2311 W. Jefferson Street, Philadelphia, Pennsylvania, in violation of Title 21, United

States Code, Section 841(a)(1), (b)(1)(C), and Title 18, United States Code, Section 2.

In violation of Title 21, United States Code, Section 860(a).

## COUNT FORTY EIGHT

**THE GRAND JURY FURTHER CHARGES THAT:**

From at least in or about 2012 to on or about September 2, 2014, in Philadelphia, in the Eastern District of Pennsylvania, defendant

### GENE WILSON, JR.
### a/k/a "Big Gene,"

managed and controlled Apartment 1406 at 1515 Judson Way within the Norman Blumberg Apartment Complex, a housing facility owned by the Philadelphia Housing Authority, a public housing authority, located at 2311 W. Jefferson Street, Philadelphia, Pennsylvania, as a lessee and occupant, and knowingly and intentionally made available for use, and aided and abetted the making available for use, Apartment 1406 for the purpose of unlawfully manufacturing, storing, and distributing a controlled substance, that is, cocaine base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 856(a)(2), and Title 18, United States Code, Section 2.

## NOTICE OF FORFEITURE

**THE GRAND JURY FURTHER CHARGES THAT:**

1.        As a result of the violations of Title 21, United States Code, Sections 846,

841(a)(1), 843(b), and 860(a) as set forth in this indictment, defendants

**JUAN JARMON,**
a/k/a "J,"
a/k/a "Yizzo,"
**DAMON EDWARDS,**
a/k/a "Boo,"
a/k/a "Boo-Boo,"
**EDWARD STINSON,**
a/k/a "E-Black,"
**DONTA EDWARDS,**
a/k/a "Boog,"
**RAHEEN BUTLER,**
a/k/a "Raheem,"
a/k/a "Riddles,"
a/k/a "Ra-Ra,"
**MICHAEL FERRELL,**
a/k/a "Mike,"
**DOTTIE GOOD,**
a/k/a "Dreds,"
a/k/a "Dots,"
**TAFT HARRIS, JR.,**
a/k/a "Taff,"
a/k/a "Taz,"
**STEVEN THOMPSON,**
a/k/a "Tall Steve,"
**STEPHEN DAWKINS,**
a/k/a "Diamond,"
**DEREK FERNANDES,**
a/k/a "Reds,"
a/k/a "Mark Carr,"
**ANTHONY LEE STAGGERS,**
a/k/a "Ant," and
**GENE WILSON, JR.,**
a/k/a "Big Gene"

shall forfeit to the United States of America:

a.    Any property used or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such offense, including the following

b.    Any property constituting, or derived from, proceeds obtained directly or indirectly from the commission of such offense, including the following: $1,000,800 U.S. currency.

2.    If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

c.    has been placed beyond the jurisdiction of the Court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property subject to forfeiture.

All pursuant to Title 21, United States Code, Section 853.

**A TRUE BILL:**

_____
**FOREPERSON**

**LOUIS D. LAPPEN**
**Acting United States Attorney**

73