# THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JUAN JARMON,                        :
    *Petitioner*
                            :    **Criminal No. 17-72-1**
      **v.**                            **Civil No. 23-305**
                            :
UNITED STATES OF AMERICA,            :
    *Respondent*                        :

## ORDER

AND NOW, this _____ day of _____, 2023, upon consideration of Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 By a Person in Federal Custody, and the government's response thereto, it is hereby ORDERED that the petitioner's motion is DENIED without a hearing. This Court finds that the petitioner has failed to make a substantial showing of a denial of any constitutional right and accordingly that a Certificate of Appealability will not issue.

BY THE COURT:

_____
HONORABLE PAUL S. DIAMOND
*Judge, United States District Court*

**THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JUAN JARMON,** | : | |
| *Petitioner* | | |
| | : | **Criminal No. 17-72-1** |
| **v.** | | **Civil No. 23-305** |
| | : | |
| **UNITED STATES OF AMERICA,** | | |
| *Respondent* | : | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 BY A PERSON IN FEDERAL CUSTODY**

The United States of America, by and through its attorneys, Jacqueline C. Romero, United States Attorney for the Eastern District of Pennsylvania, and Jerome M. Maiatico, Assistant United States Attorney for the District, hereby responds to Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 by a Person in Federal Custody and states as follows:

## I.     INTRODUCTION

This Court should deny the petitioner Juan Jarmon's motion as meritless. Jarmon makes four ineffective assistance of counsel claims, three from the trial stage and one from the appeals stage of the proceedings, in which he alleges he is being held unlawfully. None of these claims are sufficient to grant the motion. As a result, Jarmon's motion to vacate, set aside, or correct his sentence must be denied.

II.   **BACKGROUND**

Petitioner Jarmon was a recidivist drug dealer and leader of a violent drug trafficking group that operated in a public housing community in Philadelphia, selling large amounts of crack cocaine all day, every day for months on end in 2013 and 2014.[1] Jarmon's group employed a large network of drug suppliers, supervisors, shift sellers, and lookouts. As leader, Jarmon purchased bulk quantities of crack cocaine, recruited, hired, and fired sellers and lookouts, supplied the sellers with bundles of crack cocaine, gave them authority to sell the drugs within his drug territory, collected drug proceeds, paid them for their shifts, levied taxes on sellers and customers, and provided protection from rival drug traffickers, among other duties. During the course of the criminal investigation, Jarmon was caught on video recordings and wire intercepts conducting drug sales and overseeing the drug trafficking group's operations.

Jarmon ruled with an iron fist, threatening and assaulting those who disrupted his drug trafficking business. Jarmon intimidated law-abiding residents who reported him to the police, including a female resident about whom he said, "She don't understand how this sh*t go down around here. . . . I'm gonna get her hurt. . . . I'm getting six people to beat her the f*ck up tonight." Tr. 03/06/19 at pp. 101-104, Gov. Tr. Exhs. 211, 211A. He threatened rivals who disrupted his drug trafficking business, telling others he would "beat the sh*t" out of them." Tr. 03/06/19 at pp. 98-101, Gov. Tr. Exhs. 210, 210A. And he physically assaulted a female drug dealer who failed to pay him drug

---

[1] Codefendant Damon Edwards led the drug trafficking operation along with Jarmon, supervising the shift sellers and drug sales. Edwards pled guilty to a drug trafficking conspiracy and substantive distribution counts.

proceeds, cracking her head against a table and leaving her bloodied with stitches. Tr. 03/07/19 at p. 23, Gov. Tr. Exh. 601, Tr. 03/08/19 at pp. 17-22.

On February 8, 2017, a grand jury returned a 48-count indictment charging Jarmon and 12 other members of his drug trafficking group with multiple drug trafficking crimes. Jarmon was charged with conspiracy to distribute 280 grams or more of cocaine base ("crack") and multiple counts of distributing crack. Jarmon alone proceeded to trial, where he was represented by counsel, attorney Maureen Coggins, Esquire. On March 13, 2019, Jarmon was convicted of the drug trafficking conspiracy (Count 1), as well as one count of using a communication facility in furtherance of a drug felony, in violation of 21 U.S.C. § 843(b) (Count 2); six counts of distribution of crack, in violation of 21 U.S.C. § 841(a)(1) (Counts 7, 9, 11, 13, 15, 17); five counts of distributing crack within 1,000 feet of public housing, in violation of 21 U.S.C. § 860(a) (Counts 8, 12, 14, 16, 18); five counts of possession of crack with intent to distribute (Counts 24, 26, 28, 30, 32); and five counts of possession of crack with intent to distribute within 1,000 feet of public housing (Counts 25, 27, 29, 31, 33). Twelve of these counts (Counts 17-18, 24-33) also expressly charged aiding and abetting, in violation of 18 U.S.C. § 2, as an alternative theory of guilt. Jarmon was found not guilty of two distribution counts (Counts 22 and 23).

Jarmon's counsel moved for a judgment of acquittal at the close of the government's case. The Court denied the motion, stating that it would issue a written memorandum after the completion of the trial. Tr. 03/12/19 at pp. 54-55. On May 7, 2019, the Court issued a memorandum explaining why the evidence was sufficient to support Jarmon's conviction on the conspiracy count. Doc. 527.

On November 21, 2019, the Court held a sentencing hearing. The Court determined that as a leader of the drug conspiracy, Jarmon was responsible for over 280 grams of crack cocaine and subject to enhancements for using or threatening violence, possession of a dangerous weapon (firearm), and leadership role. Doc. 613, at 5-8. With a total offense level was 40 and criminal history category of VI, Jarmon's guideline range was 360 months to life imprisonment. Doc. 613, at 8. After hearing argument on the appropriate sentence, and considering the Section 3553(a) factors, the Court imposed a bottom-end guideline sentence of 360 months' imprisonment. Doc. 613, at 9; Judgment of Conviction, Doc. 618.

Jarmon filed a timely appeal in the Third Circuit, where he was represented again by attorney Maureen Coggins, Esquire, and his counsel filed an extensive brief challenging, among other things, the sufficiency of the evidence on all counts and the jury's drug quantity determination that held Jarmon accountable for at least 280 grams or more of crack cocaine. On September 15, 2021, the Third Circuit found that the district court committed no errors and affirmed Jarmon's conviction and sentence. *See United States v. Jarmon*, 14 F.4th 268, 275-76 (3d Cir. 2021), cert. denied, 211 L. Ed. 2d 615, 142 S. Ct. 930 (2022).

The underlying motion was timely filed. Doc. 690. On April 4, 2023, this Court ordered that the government respond to the Jarmon's motion by May 5, 2023. Doc. 693. For the reasons set forth below, Jarmon's motion must be denied.

### III.   **ARGUMENT**

### A.   **Defense Counsel Was Not Ineffective.**

In his motion, petitioner Jarmon alleges that his attorney, Maureen Coggins, Esquire, was constitutionally ineffective for failing to move to dismiss a juror during

trial (Ground One – Issue One), for failing to move for a judgment of acquittal on one of the drug trafficking charges and on the aiding and abetting charges (Ground One – Issues Two and Three), and for failing to argue on appeal that *United States v. Rowe*, 919 F.3d 752 (3d Cir. 2019), should have controlled the jury's determination of drug quantity (Ground Two). All four of his ineffective assistance claims are meritless and fall short of the demanding standard established by *Strickland v. Washington*, 466 U.S. 668 (1984).

In *Strickland*, the Supreme Court held that a claim of ineffective assistance of counsel requires a showing that defense counsel's performance was deficient and that the petitioner was prejudiced by counsel's deficient performance. *Id.* at 687. The first prong of the test requires the petitioner to show that counsel's performance fell below an objective standard of reasonableness as defined by prevailing professional norms, such that petitioner was effectively denied the "counsel" guaranteed by the Sixth Amendment. *Id.* at 687-88. In applying the "professional norms" standard, "[j]udicial scrutiny of counsel's performance must be highly deferential," and courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "[T]hat is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotations omitted).

"There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999). Indeed, "defense counsel can not be faulted for failing to make a request that was not likely to be granted," *Jackson v. Carroll*, 161 F. App'x 190, 194 n.3

(3d Cir. 2005), or for failing to raise an issue on appeal where there was no underlying error, *United States v. Scripps*, 961 F.3d 626, 630 (3d Cir. 2020).

To be entitled to relief, the petitioner must also show that his counsel's errors were prejudicial. *Id.* at 687. In order to satisfy the prejudice prong, the petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Courts may dispose of an ineffective assistance of counsel claim under either prong. *Strickland*, 466 U.S. at 697.

Ultimately, the petitioner bears the heavy burden of showing that his counsel's performance prompted "a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687. Jarmon cannot meet this burden on any of his ineffective assistance claims.

### 1.    **Defense Counsel Was Not Ineffective for Failing to Move to Dismiss a Juror During Trial.**

Ground One – Issue One of petitioner Jarmon's Section 2255 motion alleges that defense counsel was constitutionally ineffective for failing to move to dismiss a juror who initially had difficulty understanding the audio recordings presented during the government's case-in-chief. Pet'r's Mot. 16-19. This claim is without merit.

Under Rule 23(b) of the Federal Rules of Criminal Procedure, a trial court may excuse a juror for "just cause" after the trial begins. Fed. R. Crim. P. 23(b). A trial court may dismiss a juror where the juror refuses to apply the law, refuses to follow the court's instructions, fails to deliberate, or demonstrates bias. *See United States v. Fattah*, 914 F.3d 112, 149 (3d Cir. 2019).

Here, there was no "just cause" to dismiss the juror, and under the first prong of *Strickland*, defense counsel cannot be held constitutionally ineffective for failing to raise

a meritless motion to dismiss the juror. *See Strickland*, 466 U.S. at 687; *Sander*s, 165 F.3d at 253. On the first day of trial testimony, the government offered into evidence audio recordings where the defendant, in slang and coded language, discussed his drug trafficking business with co-conspirators. Later in the day, one of the jurors remarked to the courtroom deputy that she "was having trouble understanding what's on the tapes [audio recordings]." Tr. 3/6/2019 at p. 87. The Court made the parties aware of the juror's remark and referred to the Court's prior cautionary instructions about the nature of the audio recordings and accompanying transcripts, when the jurors were told, "[I]f you cannot hear or understand certain parts of the recordings, you must ignore the transcripts as far as those parts are concerned." Tr. 3/6/2019 at p. 74. These instructions were properly requested by defense counsel and repeated by the Court several times to the jury. Tr. 3/6/2019 at p. 74; Tr. 03/13/19 at pp. 23; *see Gov't of Virgin Islands v. Martinez*, 847 F.2d 125, 128 (3d Cir.1988) (finding that a trial court should "advise[ ] the jury as to the limited role to be served by the transcript" before deliberations).

There is no evidence in the record that this juror refused to follow these instructions, refused to follow the law, failed to deliberate, or demonstrated any bias against the defendant. The juror's concerns were addressed by the court's instructions and the government's subsequent presentation of evidence. This was a single remark from one juror early in the trial, and no additional concerns were raised during the ensuing week of trial or during deliberations. Therefore, there was no basis to dismiss the juror, and any motion to dismiss her would have been specious at best and likely would not have been granted. *See Fattah, 914 F.3d at 149; Jackson*, 161 F. App'x at 194

n.3 ("[D]efense counsel can not be faulted for failing to make a request that was not likely to be granted.").

Moreover, defense counsel's decision not to move to dismiss the juror was also a sound strategic choice. *See Strickland*, 466 U.S. at 689 (citing the strong presumption that counsel's strategic choices are reasonable); *Miller v. Webb*, 385 F.3d 666, 672-73 (6th Cir. 2004) (finding that defense counsel's decision to keep a juror on the jury is considered a matter of trial strategy that can rarely form the basis for an ineffectiveness claim). The defense chose to attack the sufficiency of the government's evidence by arguing to the jury that audio recordings of the defendant were "almost impossible to understand." Tr. 3/6/2019 at p. 29. If a juror then stated that she was having difficulty understanding the recordings, that speaks to the juror's view of the government's case and would inure to the defendant's benefit. Moving to dismiss that juror arguably would have only hurt the defendant's case. Indeed, courts of appeals prohibit a judge from dismissing jurors in similar situations during deliberations. *See Fattah*, 914 F.3d at 149–50 ("The courts of appeals are emphatic that trial courts may not dismiss a juror during deliberations if the request for discharge stems from doubts the juror harbors about the sufficiency of the government's evidence.") (internal quotes omitted). Defense counsel's choice to keep the juror was governed firmly by the presumption of sound strategy, particularly since the juror's remark only reinforced bona fide defense arguments, and thus, defense counsel was not ineffective. *See Strickland*, 466 U.S. at 689.

Similarly, under the second prong of the *Strickland* test, Jarmon has failed to show any prejudice. *See Strickland*, 466 U.S. at 694. Jarmon presents no evidence that this juror refused to follow the Court's instructions, refused to follow the law, failed to

deliberate, or demonstrated any bias against the defendant. Furthermore, Jarmon was caught red-handed on video recordings and wire intercepts conducting drug sales and overseeing his drug trafficking group's operations. Given the overwhelming evidence against him, he cannot demonstrate a reasonable probability that but for counsel's failure to object, the outcome of the proceeding would have been different. For these reasons, his ineffective assistance claim also fails under the second prong.

### 2.   Defense Counsel Was Not Ineffective for Failing to Move for a Judgment of Acquittal on Other Grounds.

Ground One – Issues Two and Three of the petitioner Jarmon's Section 2255 motion allege that defense counsel was ineffective for failing to move for a judgment of acquittal on one of the drug trafficking charges and on the aiding and abetting charges based on the sufficiency of the government's evidence. These claims are meritless. In Ground One – Issue Two, Jarmon argues that defense counsel should have moved for acquittal on Count 2 of the indictment, because of the previously-described juror's remark to the courtroom deputy. Pet'r's Mot. 19-23. Defense counsel, however, had no basis to dismiss that juror, *see supra*, and the juror's early remark had no bearing on the sufficiency of the evidence presented by the government throughout the trial. In Ground One – Issue Three, Jarmon argues that that defense counsel should have moved for acquittal on all the aiding and abetting drug trafficking charges (Counts 17-18, 24-33) because he was the "principal" drug trafficker in the conspiracy and therefore could not be found guilty as an accomplice. Pet'r's Mot. 24-28. Jarmon misapprehends both the charges and the facts presented in the case, as well as the relevant case law on accomplice liability. His defense counsel was not ineffective for failing to move for an

acquittal based on these claims, and Jarmon's arguments fail under both *Strickland* prongs.

The Court's review of the sufficiency of the evidence is "highly deferential." *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 430 (3d Cir. 2013) (en banc). The question is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (emphasis in original). The reviewing court "must be ever vigilant . . . not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting [our] judgment for that of the jury." *Caraballo-Rodriguez*, 726 F.3d at 430, quoting *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005).

Here, defense counsel did, in fact, move for a judgment of acquittal on all counts at the close of the government's case at trial. Tr. 03/12/19 at pp. 54. As this Court previously found, the evidence at trial was more than sufficient and provided an ample basis for the jury to convict. Tr. 03/12/19 at pp. 54-55; Doc. 527, at 7-8. In fact, the evidence was overwhelming and included dozens of intercepted wire calls where Jarmon discussed his drug trafficking, audio and video recordings of dozens of controlled drug purchases from Jarmon and his co-conspirators, and the testimony of two co-conspirators who described Jarmon as the leader of the drug trafficking group. Defense counsel's motion preserved Jarmon's right to further challenge this issue on appeal, which he did, and on appeal, the Third Circuit also found that the evidence was sufficient to convict Jarmon. *See Jarmon*, 14 F.4th at 273-76 ("[T]he Government carried its burden of proof on the counts of conviction.").

Any additional objections to the sufficiency of the government's evidence would have been meritless, and therefore, under *Strickland's* first prong, defense counsel was not ineffective for failing to make them. *Sanders*, 165 F.3d at 253; *Strickland*, 466 U.S. at 689. Jarmon now argues that defense counsel should have moved for acquittal on Count 2, which charged Jarmon with using a communication facility in furtherance of a drug felony on October 3, 2012, because of the juror who remarked on the first day of trial testimony that she "was having trouble understanding what's on the tapes." Jarmon's argument simply ignores the legal standard, as well as the overwhelming evidence related to that count, presented both before and after the juror's remark.

Earlier that day, the government presented an audio recording of a telephone call from October 3, 2012, where Jarmon was given permission by his co-conspirator to distribute crack inside the public housing complex. The co-conspirator told Jarmon he could "make all the money off the building, right now." They discussed the specific floor (18th floor) on which Jarmon could sell crack, a specific apartment to be used as a stash location, and a recommended drug dealer to employ to sell the crack. Gov. Tr. Exhs. 201, 201A. In the ensuing trial days, the government presented additional evidence that provided context to that telephone call and substantiated the discussion of drug trafficking activity, including Jarmon's subsequent sales of crack cocaine in the complex, his use of the 18th floor and the stash location, his employ of other drug dealers, and further identifications of Jarmon's voice. One of the government witnesses, for example, testified that he had sold crack in the complex for Jarmon's co-conspirator prior to being employed by Jarmon and that the co-conspirator recommended the drug dealer to Jarmon. Tr. 03/07/19 at pp. 71-73, 167. This corroborating evidence helped the jury understand the telephone conversation between Jarmon and his co-conspirator and

11

provided meaning to the words they used on that telephone call to further their drug trafficking crimes.

Viewing the evidence in the light most favorable to the government, this was more than sufficient for a rational jury to find that Jarmon engaged in the crime of using a communication facility in furtherance of a drug felony on October 3, 2012. *See Jackson*, 443 U.S. at 318-19. Moreover, any disputes about the audio recording evidence or witness testimony, including understanding who was speaking and what they were discussing, were issues for the jury that were fully explored during trial, and any conflicting inferences must be resolved in favor of the jury's verdict. *See Caraballo-Rodriguez*, 726 F.3d at 430. Thus, the juror's remark early in the trial would not have been a legitimate basis for a judgment of acquittal, and thus, defense counsel cannot be faulted to failing to raise it.

Jarmon also argues that that defense counsel should have moved for acquittal on all the aiding and abetting drug trafficking charges (Counts 17-18, 24-33) based on the sufficiency of the evidence, because he was the leader of the drug trafficking group, not an accomplice. Jarmon's argument fails for several reasons. First, in each of the substantive drug trafficking counts alleging aiding and abetting, Jarmon was charged, proof was submitted, and the jury was instructed on alternative theories of guilt, meaning that the jury could have convicted Jarmon as the principal or the accomplice. *See* Indictment, Doc. 1, and Jury Verdict Form, Doc. 480; *United States v. Garcia*, 400 F.3d 816, 820 (9th Cir. 2005) ("[A]iding and abetting is a different means of committing a single crime, not a separate offense itself[.]"). Accordingly, defense counsel would not have been successful in moving for a judgment of acquittal because the evidence was sufficient to prove Jarmon was the principal, which Jarmon does not dispute and readily

admits in his petition. *See* Pet'r's Mot. 24 ("[T]he proof at trial was that the petitioner [Jarmon] was the principle [sic] in all counts."); *cf. United States v. Kemp*, 500 F.3d 257, 279 (3d Cir. 2007) ("Because [the defendant] challenges the sufficiency of the evidence of these two theories, and has not argued that either was legally invalid or unconstitutional, we will affirm if the evidence is sufficient to support a judgment on either theory.").

Even so, the evidence was more than sufficient to also convict Jarmon on an aiding and abetting theory. In Counts 17 and 18, Jarmon was convicted based on evidence that Jarmon arranged the time (August 14, 2013), place, price, and quantity for crack distribution to a confidential source, then sent his cohort to consummate the deal. Tr. 03/11/19 at pp. 131-138, Gov. Tr. Exhs. 306, 306A. The other substantive counts (Counts 24-33) were based on intercepted calls in September 2013, in which Jarmon directed drug customers to his shift sellers to purchase crack. Gov. Tr. Exhs. 208, 208A, 209, 209A (Sept. 7, 2013); Gov. Tr. Exhs. 213, 213A (Sept. 12, 2013); Gov. Tr. Exhs. 219, 219A (Sept. 18, 2013); Gov. Tr. Exhs. 220, 220A (Sept. 19, 2013). For example, in the two separate calls on September 7, 2013, Jarmon directed drug customers to a shift seller, telling him in the later call, "Yo, uhhh, [the customer] coming up. She got fifty, give her an extra one." Gov. Tr. Exhs. 208, 208A, 209, 209A. The shift seller testified and identified Jarmon's voice on the calls and confirmed that Jarmon was sending customers up to the 18th floor of the building and directing the shift seller to sell crack to them. Tr. 03/07/19 at 84-85, 103-105.

This evidence was rather indisputable, particularly that recorded on video and audio. And viewing that evidence in the light most favorable to the government, a rational juror could readily infer that Jarmon arranged crack transactions in these

13

conversations, and thus aided and abetted the possession of crack for the purpose of distributing it as charged in these counts. *See United States v. Mercado*, 610 F.3d 841, 847 (3d Cir. 2010) (affirming conviction for aiding and abetting possession with intent to distribute drugs where defendant arranged and helped others sell drugs through a pattern of phone calls). Therefore, defense counsel was not ineffective for failing to make a meritless motion to the contrary.

Jarmon's claims also fail under the second prong of *Strickland*, because given the overwhelming evidence against him, he cannot demonstrate prejudice, or any reasonable probability that but for counsel's failure to raise these issues, the outcome of the proceeding would have been different. *See Strickland*, 466 U.S. at 694.

### 3.   Defense Counsel Was Not Ineffective for Failing to Challenge the Drug Quantity under *Rowe* on Appeal.

Finally, Ground Two – Issue One of the petitioner Jarmon's Section 2255 motion alleges that defense counsel was ineffective for failing to argue on appeal that *United States v. Rowe*, 919 F.3d 752 (3d Cir. 2019), should have controlled the jury's determination of drug quantity. Pet'r's Mot. 28-31. Jarmon argues that the *Rowe* decision prevented the jury from aggregating drug weights in Count 1, the drug trafficking conspiracy, for the purpose of meeting the mandatory minimum sentencing threshold. Jarmon is wrong. The jury was properly permitted to aggregate drug weights in that count, consistent with *Rowe* and *United States v. Williams*, 974 F.3d 320 (3d Cir. 2020). Therefore, defense counsel was not ineffective for failing to raise this issue on appeal, where there was no underlying error. *See Scripps*, 961 F.3d at 630.

*Rowe* does not apply to Jarmon's conspiracy conviction in Count 1. In *Rowe*, the court found that the substantive offense of drug distribution is not a continuing offense

and, therefore, the drug amounts cannot be aggregated over time for the purposes of reaching a statutory mandatory minimum sentence. *Rowe*, 919F.3d at 760. Here, however, Jarmon was charged with and convicted of a conspiracy to distribute drugs in Count 1, which is a continuing offense and allows for the aggregation of drug quantities over the course of the conspiracy. The government's evidence showed Jarmon was involved in an ongoing conspiracy, leading a violent drug trafficking group that sold large amounts of crack cocaine all day, every day for months and employed a large network of drug suppliers, supervisors, shift sellers, and lookouts. These facts stand in stark contrast to those in *Rowe*, which involved a single defendant being charged with a single substantive violation of drug distribution. *See Rowe*, 919F.3d at 756.

The subsequent decision in *United States v. Williams*, 974 F.3d 320 (3d Cir. 2020), further established that the jury may aggregate individual drug transactions to reach the drug weight thresholds for a conspiracy offense, so long as the total weight attributed to a particular co-conspirator was reasonably foreseeable to him. *Id*. at 364 ("[T]he quantities involved in the § 841(a) violations of multiple conspirators may be aggregated for determining the mandatory minimum of any one conspirator, subject to the ordinary limitations on co-conspirator liability."); *see also United States v. Clark*, No. 20-2876, 2023 WL 2400741, at *2 (3d Cir. Mar. 8, 2023) (finding that the defendants, "as members of the conspiracy, were responsible for the entire, reasonably foreseeable volume of drugs distributed among the group to its customers—a result on which *Rowe* has no effect"). Since *Rowe* had no effect on the jury's determination of drug quantity in the conspiracy count, defense counsel cannot be held ineffective for failing to argue this decision.

15

Moreover, the government's evidence against Jarmon showed that he was indeed responsible for well above the the mandatory minimum threshold of 280 grams of crack cocaine, as that quantity was reasonably foreseeable to Jarmon as part his participation in the conspiracy. As this Court noted in denying Jarmon's motion for acquittal, the testimony of Jarmon's shift sellers, who said that Jarmon directed and controlled their drug sales, was corroborated by substantial other evidence, and alone supported the jury's quantity finding. Doc. 527, at 7. *See Gibbs*, 190 F.3d at 219 ("[A] leader of a drug conspiracy is responsible for the drug quantities transacted by his subordinates in furtherance of the conspiracy.").

The Court also found that the jury could have relied solely on the testimony of one shift seller in concluding that Jarmon was responsible for more than 280 grams of crack. Reviewing the testimony, the Court stated that the jury could have "conservatively" found that the shift seller sold "one bundle of 0.03-gram nickel bags per shift for eight months, totaling over 340 grams of crack." The Court further stated that Jarmon and the shift seller were in "constant contact regarding crack distribution" in this time frame, so that any crack distributed by the shift seller was reasonably foreseeable to Jarmon. Doc. 527, at 8.

The shift seller's testimony regarding the volume of drug sales was also corroborated by the intercepted calls in which Jarmon discussed the amount of crack sold by his sellers. Jarmon stated that his sellers sold a "stack," or $1,000 worth of crack (about four "$250" bundles) per shift early in the month. Gov. Tr. Exhs. 232, 232A. Jarmon said that "$250 ain't nothing, man" and agreed that the sellers usually sold "higher numbers" than $250 per shift. Gov. Tr. Exhs. 234, 234A.

As this Court correctly found, the evidence fully supported the jury's conclusion that Jarmon conspired to sell more than 280 grams of crack as charged in Count 1. Defense counsel was not ineffective for failing to make any further challenges to the drug quantity determination on appeal. *See Scripps*, 961 F.3d at 634.

For all these reasons, Jarmon's ineffective assistance claims lack merit and fall short of *Strickland's* demanding standard.

### B.   <u>A Certificate of Appealability Should Not Issue.</u>

Upon the denial of a Section 2255 motion by the district court, an appeal to the Court of Appeals by the petitioner is not permitted unless he obtains a certificate of appealability. 28 U.S.C. § 2253(c)(1). The law permits the issuance of a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The application for such a certificate should first be made to the District Court. Local Rule 22.2 provides as follows:

> At the time a final order denying a petition under 28 U.S.C. § 2254 or § 2255 is issued, the district judge will make a determination as to whether a certificate of appealability should issue. If the district judge issues a certificate, the judge must state the specific issue or issues that satisfy the criteria of 28 U.S.C. § 2253. If an order denying a petition under § 2254 or § 2255 is accompanied by an opinion or a magistrate judge's report, it is sufficient if the order denying the certificate references the opinion or report.

The Third Circuit has further instructed that "as a matter of practice . . . an unsuccessful movant in a § 2255 case should in the first instance seek a certificate of appealability from the district court." *United States v. Williams*, 158 F.3d 736, 742 n.4 (3d Cir. 1998).

Accordingly, in the interests of judicial economy, the government requests that in addition to denying the instant petition this Court also find that petitioner has failed to make a substantial showing of a denial of any constitutional right.

In order to present a "substantial showing of the denial of a constitutional right," the mere allegation of a constitutional wrong, such as deprivation of the right to effective counsel, is insufficient; the petitioner must make a substantial showing of such an error in order to present an appeal. *Santana v. United States*, 98 F.3d 752, 757 (3d Cir. 1996).

To establish the required showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

For the reasons stated above, petitioner has not made the required showing, and therefore a certificate of appealability should be denied. The absence of merit of petitioner's constitutional claims is plain, and not debatable, and should be denied without an evidentiary hearing.

IV.     **<u>CONCLUSION</u>**

For the foregoing reasons, the government respectfully requests that the petitioner's *Motion Pursuant to 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By Person In Federal Custody* be denied, that the court find an evidentiary hearing is not necessary, and that a Certificate of Appealability not issue.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney


<u>/s/ Jerome M. Maiatico</u>
Jerome M. Maiatico
*Assistant United States Attorney*


DATED:  May 5, 2023.

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of this pleading has been served by first-class mail,

postage prepaid, upon:

> Mr. Juan Jarmon
> Register No. 75891-066
> USP Lee
> U.S. Penitentiary
> P.O. Box 305
> Jonesville, VA 24263

> /s/ Jerome M. Maiatico
> Jerome M. Maiatico
> *Assistant United States Attorney*

DATED:  May 5, 2023.