Juan Jarmon                    *    Case No.
                               *
V                              *    Civ No. 24-2612, 24-2681
                               *
United States of America       *    Crim No. 2:17-cr-00072-PD


Plaintiffs Motion for Partial Summary Judgment


Pursuant to Rule 56, Fed Rciv P, plaintiff Juan Jarmon
request this court to grant him summary judgment as
to the defendant The United States of America for the
damages for Double jeopardy and the denial of Due Process
of law. The reasons therefor are set forth in the plaintiff's
declaration and breif to support his motion.

/s/ [signature]

Juan Jarmon #78891-066
USP Lee, P.O. Box 305
Jonesville, Va, 24263

Juan Jarmon          *  Case No.
                     *
V                    *  Civ No. 24-2612, 24-2681
                     *
United States of America   *  Crim No. 2:17-cr-00072-PD

Plaintiff's Motion for Partial Summary Judgment

Pursuant to Rule 56, Fed R. Civ P, plaintiff Juan Jarmon
request this court to grant him summary Judgment as
to the defendant The United States of America for the
damages for Double jeopardy and the denial of Due Process
of law. The reasons therefor are set forth in the plaintiff's
declaration and breif to support his motion.

/s/ [signature]

Juan Jarmon #78891-066
USP Lee, P.O. Box 305
Jonesville, Va, 24263

Juan Jarmon                    *        Case No
                               *
V                              *        Civ No. 24-2612, 24-2681
                               *
United States of America       *        Crim No. 2:17-cr-00072-PD

Declaration in support of
Plaintiffs Motion for Partial Summary Judgment


Juan Jarmon states:

1. I am the plaintiff in this case. The complaint alleges that this is a case of double Jeopardy, that due process was violated, that was convicted of a serious crime. I submit this declaration in support of my motion for partial summary Judgment on my claim of denial of due process.

2. I am an inmate at united States penitentary Lee serving a sentence resulting from denial of due process

3. Merit of the case. The plaintiffs allegations, if proved, clearly would establish a constitutional, double Jeopary, and due process violations.

                    Conclusion

For the foregoing reasons, the court should grant the plaintiffs Motion and appoint counsel in this case.
                    /s/
                           Juan Jarmon #75891-066
                           USP Lee, P.O Box 305
                           Jonesville, Va, 24263

Juan Jarmon       *       Case No
                     *
V                     *   Civ No 24-2612, 24-2681
                     *
United States of America    *   Crim No 2:17-cr-00072-PD

## Statement of Undisputed facts

Pursuant to locale rules of this court's civil procedure, the plaintiff submits the following list of undisputed facts that entitle him to partial summary judgment on his claims of Double jeopardy and the denial of due process of law.

1. The plaintiff was charged by the United states Government In the charging indictment issued on 2/8/17 for a crime for In the state of Pennsylvannia.

2. Federal prosecution was brought against the plaintiff for the same incident as the state prosecution for which he was already punished and served a sentence of imprisionment for thus falling under the claim of Double jeopardy.

3. The Government prepaired and Compiled transcripts of a incomprehensible unintelligible audio recording to aide its case inorder to aide its case and obtain a indictment from the grand jury, these transcripts were admitted at trial on 3/6/19 in direct violation of Due Process of law.

4. On 3/6/19 presiding Judge Paul S. Diamond gave the instruction that the transcripts were not evidence and that the jury was only to make a judgment on what they heard of the incomprehensible audio recording.

5. The jury took an oath to make a judgment only on the evidence that they see or hear, thus making a clear and convincing showing of jury nullification in it denial of Due Process.

6. When providing the jury instructions to the jury on 3/13/19 presiding Judge Paul S. Diamond again instructed the jury that the transcripts of the audio recording was not evidence and to only go by what the heard and could comprehend of the unintelligible audio recording. If transcripts were not to be considered as evidence why were they presented to the jury.

7. On 3/13/19 the jury submitted a question requesting that dates of any drug sales or transactions, the government wanted the jury to depend upon the allegation of sales or transactions made in the indictment, clearly showing a violation of Due Process

8. On 3/13/19 a bench conference was held in relation to the question from the jury, in which the prosecution stated that only known sales were committed by others in the conspiracy but had presented no known sales or drug transactions made by the Plaintiff and requested that the judge instruct the jury to depend upon the allegation of drug transactions made in the indictment when rendering it's decision.

9. On 3/13/19 Juror questionnaire number 2, "We would like to have the dates of the transactions of the sale distribution of crack cocaine"

10. On 3/13/19 Judge Paul S. Diamond responded to the questionnaire stating on pg 66 (17-20) " I mean, if they look at the Verdict sheet, they can see it, and if they look at the indictment when they have, they can see it"

11. On 3/13/19 pg 66 (23-25) pg 67 (1-8) Ms Osirim stated "would be to direct them to the charges as they veiw them in the indictment and to line those up with what they see in the verdict" The court "well im not going to tell I can't tell them that"

12. On 3/13/19 pg 67 (10-13) The Court " I can simply say if you want to see the -- if you want to know the allegations the government has-- if you want to know the governments allegations, you're free to look at the indictment"

13. Clearly showing the government has no evidence in support of its allegation, but is dependant on the allegation to assist the jury in rendering its verdict.

14. On 3/13/19 pg 67 (15-17) Ms Osirim stated "We did present a number of transactions to other individuals involved other members of the conspiracy, but not the defendant."

15. On 11/21/19 pg 25 (13-16) The court Paul S. Diamond stated "and if you could, in addition to whatever else you're planning on saying, address the point that the Defendant has already been punished for this act" showing the judges awareness of double jeopardy concerns.

16. On 11/21/19 Ms Coggins asked that the defendant be given credit for the time served in the state prosecution. Time served in the state prison with the Daisy Kates hearing, the sentence punished in the state that the plaintiff served prior to the government imposition of sentence in this case clearly showing the double jeopardy concern.

/s/

Date    10/16/24

Juan Jarmon #-15891-066

USP Lee, P.O. Box 305

Jonesville, Va, 24263

| | | |
|---|---|---|
| Juan Jarmon | * * * | Case No |
| V | * | Civ No  24-2612, 24-2681 |
| United State of America | * * | Crim No. 2:17-cr-00072-PD |

Brief in Support of

Plaintiffs motion for Partial Summary Judgment

This is a § 1983 action filed by a prisoner at United States Penitentary Lee seeking damages, a declaratory judgment, and injunctive relief based on Double jeopardy, and the denial of procedural Due Process. In this motion the plaintiff seeks summary judgment on his claims from Double jeopardy and arising from the denial of due process.

Statement of Facts

As set forth in the accompanying declaration of the plaintiff, Juan Jarmon, he was convicted of serious charges at trial for a crime he was already punished for in a state conviction in violation of Due process and the Double jeopardy clause. There are numerous references to this claim of Double jeopardy on the record. No evidence of guilt submitted, merely the allegations contained in the body of the indictment.

Argument Point 1

Prodution of transcripted audio recording to Grand
Jury

When moving this case from a state prosecution to a
federal one, the prosecution had to present the same
material evidence contained in the state prosecution in
order to gain an indictment in this federal case. The
audio recordings in this case are incomprehensible and
unintelligible, meaning they cannot be easily understood
or comprehended as to the statements made. Written
transcripts prepaired and used with the intention to be
admitted at trial prior to the witness taking the stand
to obtain a federal Grand jury indictment thus the denial
of Due process, AND Double jeopardy.

Argument Point 2

Double Jeopardy

Plaintiff was already punished for this crime
or act in a state prosecution, as the record reflex's.
Trial Judge Hon Paul S. Diamond was aware of the
double jeopardy concerns as he stated THE COURT "And
if you could, in addition to what ever else you're
planning on saying, address the point that the defendant
has already been punished for this act and the probation
violation that involved testimony from officer
Solomon," Pg 25 (13-16) sentencing transcripts. showing

knowledge of the Double Jeopardy concern.
Making this claim of partial summary Judgment
clear and convincing.

## Conclusion

For the foregoing reasons, the court should grant
partial summary Judgment on liability to the
plaintiff on his due process claims, as well as his
double jeopardy. The amount of damages due to
the plaintiff must be determined at trial. Patterson
V. coughlin, 905 F.2d 564, 570 (2nd Cir 1990.)

/s/

Date 10/16/24
Respectfully Submitted

Juan Jarmon #75891-066
united States Penitentary Lee
P.o. Box 305, Jonesville, Va, 24263

Certificate of Service

I hereby swear that a copy of this breif was
mailed to all concerning parties via the United States
Postal Service on 10/16/24.

/s/ *[signature]*

Juan Jarmon #75091-066
USP Lee, P.o. Box 305
Jonesville, Va, 24263

United States Court of Appeals
21400 U.S. Courthouse
601 Market Street, Phila, Pa, 19106

United States Attorney Office
Eastern District of Pennsylvania
615 Chestnut Street, Suite 1250
Phila, Pa, 19106

United State District Court
504 Hamilton Street
Allentown, Pa, 18101

I hereby swear under the penalty of perjury
that all statements made in this breif are true.

[s]

Juan Jarmon #78891-066
USP Lee, P.o. Box 305
Jonesville, Va, 24263

pg 16

1    of were both possession with intent to deliver.  The first one

2    was .4 grams of crack cocaine.  And that was a hand-to-hand sale.

3    The police saw it, they chased him, and they arrested him.  On

4    the second, I believe that that case involved -- I don't believe

5    it was more than 2 grams of crack cocaine.

6         The first case he received a four year probation, and

7    he walked off his four year probation.  The second case that he

8    had, he received a county sentence.  However, he has two very

9    angry girlfriends, Your Honor, who continued to call the police

10   on him.  They would call and say that he had done something.  He

11   would be arrested, he would be put in jail, and then the charges

12   would be dropped.  So he did serve an extended period of time,

13   not more than -- a little bit more than a year with all the

14   probation violations.  Every one of those cases was dismissed.

15        So I know that Your Honor is looking at this and seeing

16   that, for example, in the one case he received a sentence of two

17   to five years.  That was actually off of that 15-year-old

18   conviction.  He was -- the mother of his child called and

19   reported that he had done something in the apartment.  He was

20   arrested, he was put in jail, detained as a probation violation.

21        He then went in front of the judge, Your Honor, and at

22   that time, although the charges had been dismissed, Officer

23   Solomon of the Philadelphia Police Department was called by the

24   Prosecutor in that case.  Officer Solomon of the Philadelphia

25   Police Department was also involved in this case.  Peripherally,

A855

P.g. 17

1    as Your Honor recalls, the Philadelphia Police Department, the

2    ATF, the FBI, everybody was involved in this case.  Officer

3    Solomon was part of that organization.

4            He testified in front of the judge in what's called a

5    Daisy Kates hearing.  At that time, he testified to incidents

6    that occurred here.  He actually showed the Philadelphia Common

7    Pleas Judge a photograph of my client standing with Damon

8    Edwards, Raheen Butler, and Jason Butler.  He went on to tell the

9    judge all about the water boy and all of the facts that are

10   contained in this federal indictment.  That was the only basis.

11           And so when the judge gave him two to five years, I'm

12   arguing to the Court and there's absolutely nothing to say to the

13   contrary that that was because of the -- the judge believed that

14   he was involved in the incidents that are part of this federal

15   indictment.  So he was serving his two to five year prison hit on

16   that 15-year-old case when he was served with the indictment in

17   this federal case.

18           So I will asking Your Honor for credit for the time

19   that he served in the state prison as a result of that Daisy

20   Kates hearing.

21           In addition to that, Judge, after -- during the time

22   that he was alleged to have violated the law in this case, from

23   the time that he had gotten out of jail, on the last probation

24   violation, he had actually gotten his life together.  That's when

25   he went back on his own and got his high school diploma.  That

1              THE COURT:  Sure.

2         (Pause)

3              THE DEFENDANT:  I just want to say that -- I want to

4    say thank you for being patient with me through this whole trial

5    issue, and take this -- I want to ask you to take into

6    consideration that I have not been in trouble in 15 years, and

7    it's stuff that I can't talk about because I will -- I'm

8    intending to appeal, because I can't talk about the case, because

9    I would like to appeal it, whatever the sentence might be.  I

10   just wanted to say thank you for your time and your patience.

11             THE COURT:  Very well.  Mr. Maiatico.

12             MR. MAIATICO:  Thank you, Your Honor.

13             THE COURT:  And if you could, in addition to whatever

14   else you're planning on saying, address the point that the

15   Defendant has already been punished for this act and the

16   probation violation that involved testimony from Officer Solomon.

17             MR. MAIATICO:  Yes, Your Honor.  I'll begin with that.

18   The Defendant is asking for credit for violating his state

19   probation.  He was sentenced two to five years for violating

20   state probation.  Whether or not the underlying conduct is the

21   same as here today, it's not.  But eve if it were, the guidelines

22   say --

23             THE COURT:  It's separate.  I understand.

24             MR. MAIATICO:  -- the guidelines say he should be --

25             THE COURT:  All right.  You've addressed those.

A864

1   indictment, and a term of 240 months incarceration on Count 9 of

2   the indictment.  All such terms to run concurrently.

3         Mr. Jarmon, after you are released from prison, you'll

4   participate in a supervised release program of this Court for

5   five additional years on Count 1, one additional year on Count 2,

6   6 additional years on Counts 8, 12, 14, 16, 18, 25, 27, 29, 31,

7   and 33, and three additional years on Count 9.  All to be served

8   concurrently.

9         Upon release, you are to observe the standard

10  conditions of supervision.  I will not impose a fine because you

11  need to have the ability to pay a fine.  You shall also pay a

12  special assessment of $1300.  Is there a forfeiture motion in

13  this case, Mr. Maiatico?

14        MR. MAIATICO:  There is, Your Honor, and I believe you

15  already entered the forfeiture, yes.

16        THE COURT:  Okay.  And that will be made part of the

17  judgment and commitment order in this case.

18        Ms. Coggins, do you know of any reason why the sentence

19  that I've just stated should not be imposed?

20        MS. COGGINS:  Your Honor, may I ask a question with

21  regard to my argument on the credit for the time done in the

22  state prison?  Is that part of the sentence?

23        THE COURT:  I don't think I understand your question.

24  I -- Bureau of Prisons determines what credit the Defendant will

25  be given.  This -- I am imposing this sentence for the crimes

A876

Pg 38

1    that were proven before me.   I'm not sure what you're talking

2    about?

3              MS. COGGINS:   Your Honor, under the section for the

4    guideline range with regard to the sentence that he is serving

5    for the state prison with the Daisy Kates hearing.  As I had put

6    in my --

7              THE COURT:   You're asking me whether this should be

8    consecutive or concurrent; is that what you're asking?

9              MS. COGGINS:   Yes, Your Honor.

10             THE COURT:   It will be concurrent to the state

11   sentence.

12             MS. COGGINS:   Okay.  Thank you, Judge.

13             THE COURT:   Mr. Maiatico.

14             MR. MAIATICO:   Your Honor, if I could have one moment

15   with Defense counsel and the Probation Officer?  I just have one

16   issue in the PSI I wanted to discuss --

17             THE COURT:   Sure.

18             MR. MAIATICO:   -- perhaps to address the Court on.

19         (Counsel and Probation Officer confer)

20             MR. MAIATICO:   Nothing further from the Government,

21   Your Honor.  Thank you.

22             THE COURT:   Mr. Kapuro (phonetic)?

23             MR. KAPURO:   No, Your Honor.

24             THE COURT:   Very well.  Mr. Jarmon, it is the judgmc

25   of this Court that you, Juan Jarmon, will be committed to th

A87

Juan Jarmon                      *              Case No
                                 *
V                                *       Civ No. 24-2612, 24-2681
                                 *
United States of America         *       Crim No. 2:17-cr-0072-PD

              Declaration in support of
        Plaintiffs Motion for Partial Summary Judgment


Juan Jarmon states!
1. I am the plaintiff in this case. The complaint alleges that this
is a case of double Jeopardy, that due process was violated,
that was convicted of a serious crime. I submit this declaration
in support of my motion for partial summary Judgment on my
claim of denial of due process.
2. I am an inmate at United States penitentary Lee
Serving a sentence resulting from denial of due process
3. Merit of the case. The plaintiffs allegations, if proved, clearly
would establish a constitutional, double Jeopardy, and due process
violations.
              Conclusion
For the foregoing reasons, the court should grant the plaintiffs
Notion: and appoint counsel in this case.
                            /s/
                            Juan Jarmon #75891-066
                            USP Lee, P.o Box 305
                            Jonesville, Va, 24263

Juan Jarmon                    *         Case No
                               *
√                              *         CIV No. 24-2612, 24-2681
                               *
United States of America       *         Crim No 2:17-cr-00072-PD

## Statement of Undisputed Facts

Pursuant to locale rules of this court's civil procedure, the plaintiff submit's the following list of undisputed facts that entitle him to partial summary judgment on his claims of Double jeopardy and the denial of due process of law.

1. The plaintiff was charged by the United States Government in the charging indictment issued on 2/8/17 for a crime for in the state of Pennslyvannia.

2. Federal prosecution was brought against the plaintiff for the same incident as the state prosecution for which he was already punished and served a sentence of imprisionment for thus falling under the claim of Double jeopardy.

3. The Government prepaired and compiled transcripts of a incomprehensible unintelligible audio recording to aide it's case inorder to aide its case and obtain a indictment from the grand jury, these transcripts were admitted at trial on 3/6/19 in direct violation of Due Process of law.

4. On 3/6/19 presiding judge Paul S. Diamond gave the instruction that the transcripts were not evidence and that the jury was only to make a judgment on what they heard of the incomprehensible audio recording.

5. The jury took an oath to make a judgment only on the evidence that they see or here, thus making a clear and convincing showing of jury nullification in it denial of Due Process.

6. When providing the jury instructions to the jury on 3/13/19 presiding Judge Paul S. Diamond again instructed the jury that the transcripts of the audio recording was not evidence and to only go by what the heard and could comprehend of the unintelligible audio recording. If transcripts were not to be considered as evidence why were they presented to the jury.

7. On 3/13/19 the jury submitted a question requesting that dates of any drug sales or transactions, the government wanted the jury to depend upon the allegation of sales or transactions made in the indictment, clearly showing a violation of Due Process

8. On 3/13/19 a bench conference was held in relation to the question from the jury, in which the prosecution stated that only known sales were committed by others in the conspiracy but had presented no known sales or drug transactions made by the Plaintiff and requested that the judge instruct the jury to depend upon the allegation of drug transactions made in the indictment when rendering it's decision.

9. On 3/13/19 Juror questionnaire number 2, "We would like to have the dates of the transactions of the sale distribution of crack cocaine"

10. On 3/13/19 Judge Paul S. Diamond responded to the questionnaire stating on pg 66 (17-20) " I mean, if they look at the verdict sheet, they can see it, and if they look at the indictment when they have, they can see it"

11. On 3/13/19 pg 66 (23-25) pg 67 (1-8) Ms Osirim stated "would be to direct them to the charges as they veiw them in the indictment and to line those up with what they see in the verdict" The court "well Im not going to tell I can't tell them that"

12. On 3/13/19 pg 67 (10-13) The court " I can simply say If you want to see the-- if you want to know the allegations the government has-- if you want to know the governments allegations, you're free to look at the indictment"

13. Clearly showing the government has no evidence in support of its allegation, but is dependant on the allegation to assist the jury in rendering its verdict.

14. On 3/13/19 pg 67 (15-17) Ms Osirim stated "We did present a number of transactions to other individuals involved other members of the conspiracy, but not the defendant."

15. On 11/21/19 pg 25 (13-16) The court Paul S. Diamond stated "and if you could, in addition to whatever else you're planning on saying, address the point that the Defendant has already been punished for this act" Showing the judges awareness of double jeopardy concerns.

16. On 11/21/19 Ms Coggins asked that the defendant be given credit for the time served in the state prosecution. Time served in the state prison with the Daisy Kates hearing, the sentence punished in the state that the plaintiff served prior to the government imposition of sentence, in this case clearly showing the double jeopardy concern.

/s/

Date    10/16/24

Juan Jarmon #-18891-066

USP Lee, P.o. Box 305

Jonesville, Va, 24263

| | | |
|---|---|---|
| Juan Jarmon | * * * | Case No |
| V | * | Civ No. 24-2612, 24-2681 |
| United State of America | * | Crim No. 2:17-cr-00072-PD |

### Brief in Support of
### Plaintiffs motion for Partial Summary Judgment

This is a §1983 action filed by a prisoner at United States Penitentary Lee seeking damages, a declaratory judgment, and injunctive relief based on Double jeopardy, and the denial of procedural Due Process. In this motion the plaintiff seeks summary judgment on his claims from Double jeopardy and arising from the denial of due process.

### Statement of Facts

As set forth in the accompanying declaration of the plaintiff, Juan Jarmon, he was convicted of serious charges at trial for a crime he was already punished for in a state conviction in violation of Due process and the Double jeopardy clause. There are numerous references to this claim of Double jeopardy on the record. No evidence of guilt submitted, merely the allegations contained in the body of the indictment.

## Argument Point 1

### Production of transcripted audio recording to Grand Jury

When moving this case from a state prosecution to a federal one, the prosecution had to present the same material evidence contained in the state prosecution in order to gain an indictment in this federal case. The audio recordings in this case are incomprehensible and unintelligible, meaning they cannot be easily understood or comprehended as to the statements made. Written transcripts prepared and used with the intention to be admitted at trial prior to the witness taking the stand to obtain a federal Grand jury indictment thus the denial of Due process, AND Double jeopardy.

## Argument Point 2

### Double Jeopardy

Plaintiff was already punished for this crime or act in a state prosecution, as the record reflex's. Trial Judge Hon Paul S. Diamond was aware of the double jeopardy concerns as he stated THE COURT "And if you could, in addition to what ever else you're planning on saying, address the point that the defendant has already been punished for this act and the probation violation that involved testimony from officer Solomon," Pg 25 (13-16) Sentencing transcripts. Showing

knowledge of the Double Jeopardy concern.
Making this claim of partial summary Judgment
clear and convincing.

## Conclusion

For the foregoing reasons, the court should grant
partial summary Judgment on liability to the
plaintiff on his due process claims, as well as his
double Jeopardy. The amount of damages due to
the plaintiff must be determined at trial. Patterson
V. coughlin, 905 F.2d 564, 570 (2nd Cir 1990.)

/s/

Date 10/16/24
Respectfully Submitted
Juan Jarmon #75891-066
united states Penitentary Lee
P.o. Box 305, Jonesville, Va, 24263

Certificate of Service

I hereby swear that a copy of this breif was
mailed to all concerning parties via the United States
Postal Service on 10/16/24.

/s/

Juan Jarmon #75891-066
USP Lee, P.o. Box 305
Jonesville, Va, 24263

United States Court of Appeals
21400 U.S. courthouse
601 Market Street, Phila, Pa, 19106

United States Attorney Office
Eastern District of Pennsylvania
615 chestnut Street, Suite 1250
Phila, Pa, 19106

United State District Court
504 Hamilton Street
Allentown, Pa, 18101

I Hereby swear under the penalty of perjury
that all statements made, in this breif are true.

/s/

Juan Jarmon #75891-066
USP Lee, P.o. Box 305
Jonesville, Va, 24263

1  of were both possession with intent to deliver.  The first one

2  was .4 grams of crack cocaine.  And that was a hand-to-hand sale.

3  The police saw it, they chased him, and they arrested him.  On

4  the second, I believe that that case involved -- I don't believe

5  it was more than 2 grams of crack cocaine.

6          The first case he received a four year probation, and

7  he walked off his four year probation.  The second case that he

8  had, he received a county sentence.  However, he has two very

9  angry girlfriends, Your Honor, who continued to call the police

10 on him.  They would call and say that he had done something.  He

11 would be arrested, he would be put in jail, and then the charges

12 would be dropped.  So he did serve an extended period of time,

13 not more than -- a little bit more than a year with all the

14 probation violations.  Every one of those cases was dismissed.

15         So I know that Your Honor is looking at this and seeing

16 that, for example, in the one case he received a sentence of two

17 to five years.  That was actually off of that 15-year-old

18 conviction.  He was -- the mother of his child called and

19 reported that he had done something in the apartment.  He was

20 arrested, he was put in jail, detained as a probation violation.

21         He then went in front of the judge, Your Honor, and at

22 that time, although the charges had been dismissed, Officer

23 Solomon of the Philadelphia Police Department was called by the

24 Prosecutor in that case.  Officer Solomon of the Philadelphia

25 Police Department was also involved in this case.  Peripherally,

1    as Your Honor recalls, the Philadelphia Police Department, the

2    ATF, the FBI, everybody was involved in this case.  Officer

3    Solomon was part of that organization.

4            He testified in front of the judge in what's called a

5    Daisy Kates hearing.  At that time, he testified to incidents

6    that occurred here.  He actually showed the Philadelphia Common

7    Pleas Judge a photograph of my client standing with Damon

8    Edwards, Raheen Butler, and Jason Butler.  He went on to tell the

9    judge all about the water boy and all of the facts that are

10   contained in this federal indictment.  That was the only basis.

11           And so when the judge gave him two to five years, I'm

12   arguing to the Court and there's absolutely nothing to say to the

13   contrary that that was because of the -- the judge believed that

14   he was involved in the incidents that are part of this federal

15   indictment.  So he was serving his two to five year prison hit on

16   that 15-year-old case when he was served with the indictment in

17   this federal case.

18           So I will asking Your Honor for credit for the time

19   that he served in the state prison as a result of that Daisy

20   Kates hearing.

21           In addition to that, Judge, after -- during the time

22   that he was alleged to have violated the law in this case, from

23   the time that he had gotten out of jail, on the last probation

24   violation, he had actually gotten his life together.  That's when

25   he went back on his own and got his high school diploma.  That

A856

1          THE COURT:  Sure.

2     (Pause)

3          THE DEFENDANT:  I just want to say that -- I want to

4    say thank you for being patient with me through this whole trial

5    issue, and take this -- I want to ask you to take into

6    consideration that I have not been in trouble in 15 years, and

7    it's stuff that I can't talk about because I will -- I'm

8    intending to appeal, because I can't talk about the case, because

9    I would like to appeal it, whatever the sentence might be.  I

10   just wanted to say thank you for your time and your patience.

11         THE COURT:  Very well.  Mr. Maiatico.

12         MR. MAIATICO:  Thank you, Your Honor.

13         THE COURT:  And if you could, in addition to whatever

14   else you're planning on saying, address the point that the

15   Defendant has already been punished for this act and the

16   probation violation that involved testimony from Officer Solomon.

17         MR. MAIATICO:  Yes, Your Honor.  I'll begin with that.

18   The Defendant is asking for credit for violating his state

19   probation.  He was sentenced two to five years for violating

20   state probation.  Whether or not the underlying conduct is the

21   same as here today, it's not.  But eve if it were, the guidelines

22   say --

23         THE COURT:  It's separate.  I understand.

24         MR. MAIATICO:  -- the guidelines say he should be --

25         THE COURT:  All right.  You've addressed those.

A864

1    indictment, and a term of 240 months incarceration on Count 9 of

2    the indictment.   All such terms to run concurrently.

3        Mr. Jarmon, after you are released from prison, you'll

4    participate in a supervised release program of this Court for

5    five additional years on Count 1, one additional year on Count 2,

6    6 additional years on Counts 8, 12, 14, 16, 18, 25, 27, 29, 31,

7    and 33, and three additional years on Count 9.   All to be served

8    concurrently.

9        Upon release, you are to observe the standard

10   conditions of supervision.   I will not impose a fine because you

11   need to have the ability to pay a fine.   You shall also pay a

12   special assessment of $1300.   Is there a forfeiture motion in

13   this case, Mr. Maiatico?

14       MR. MAIATICO:   There is, Your Honor, and I believe you

15   already entered the forfeiture, yes.

16       THE COURT:   Okay.   And that will be made part of the

17   judgment and commitment order in this case.

18       Ms. Coggins, do you know of any reason why the sentence

19   that I've just stated should not be imposed?

20       MS. COGGINS:   Your Honor, may I ask a question with

21   regard to my argument on the credit for the time done in the

22   state prison?   Is that part of the sentence?

23       THE COURT:   I don't think I understand your question.

24   I -- Bureau of Prisons determines what credit the Defendant will

25   be given.   This -- I am imposing this sentence for the crimes

1    that were proven before me.  I'm not sure what you're talking

2    about?

3              MS. COGGINS:  Your Honor, under the section for the

4    guideline range with regard to the sentence that he is serving

5    for the state prison with the Daisy Kates hearing.  As I had put

6    in my --

7              THE COURT:  You're asking me whether this should be

8    consecutive or concurrent; is that what you're asking?

9              MS. COGGINS:  Yes, Your Honor.

10             THE COURT:  It will be concurrent to the state

11   sentence.

12             MS. COGGINS:  Okay.  Thank you, Judge.

13             THE COURT:  Mr. Maiatico.

14             MR. MAIATICO:  Your Honor, if I could have one moment

15   with Defense counsel and the Probation Officer?  I just have one

16   issue in the PSI I wanted to discuss --

17             THE COURT:  Sure.

18             MR. MAIATICO:  -- perhaps to address the Court on.

19        (Counsel and Probation Officer confer)

20             MR. MAIATICO:  Nothing further from the Government,

21   Your Honor.  Thank you.

22             THE COURT:  Mr. Kapuro (phonetic)?

23             MR. KAPURO:  No, Your Honor.

24             THE COURT:  Very well.  Mr. Jarmon, it is the judgme

25   of this Court that you, Juan Jarmon, will be committed to the

1          (Out of the presence of the jury)

2          THE COURT:  Okay, please be seated.  Is there

3    anything anybody would like to put on the record?

4          MS. OSIRIM:  No, Your Honor.

5          MS. COGGINS:  Your Honor, just that I'm staying in a

6    hotel.  One of the jurors is also in that hotel.  I've said

7    hello to him twice, that's all.

8          THE COURT:  That's fine.  Nothing else?  There's

9    nothing else you want to put on the record?

10         MS. COGGINS:  No, Your Honor.

11         THE COURT:  Okay, I would ask that you -- they're

12   inevitably going to be questions that I will discuss with

13   counsel before I answer them.  I would ask that you, to the

14   extent you can remain here, I would grateful.  Otherwise,

15   excuse me, please give Lenora your cell phone number so she can

16   reach you.

17         My thanks to all counsel.  You've worked very, very

18   hard in this case.  And I appreciate it.  I hope your clients

19   do as well.  And my thanks to our marshals.

20         (Recess at 11:18 a.m., until 12:20 p.m.)

21         (Outside the presence of the jury)

22         THE CLERK:  Court's in session.

23         THE COURT:  Okay, please be seated, everybody.  We

24   have a question from the jury.  I believe that you have copies

25   of it.  I've marked the question -- juror question number 1.

1    It'll be C 1, Court Exhibit 1.

2              "To Judge Diamond, we would like to request the

3    indictment and definition of distribution and possession under

4    the law."  I believe it's Juror Number 7 that's the foreperson,

5    the guy who was in that seat.

6              MS. COGGINS:  In the back on the end?

7              THE COURT:  Yeah.

8              MS. COGGINS:  Okay.

9              THE COURT:  Second from the end.

10             MS. COGGINS:  The second.

11             THE COURT:  I -- it was my oversight not to send the

12   indictment out -- the redacted indictment out with him, which I

13   will do now.

14             My clerk has given you -- I would propose simply

15   giving them the written instructions on -- from pages 58 to 70

16   of the final instructions in which I define possession and

17   distribution rather than read it to them again.  I don't see

18   any need to read it to them again.  They can read it for

19   themselves, but just one copy.

20             MS. OSIRIM:  I don't have an extra copy, Your Honor.

21             MS. COGGINS:  I have no -- that's fine, Your Honor.

22             THE COURT:  Okay, then, why don't we take your copy,

23   Ms. Coggins.  And does someone have a copy of the redacted

24   indictment.  Do you, Joe?

25             THE COURT RECORDER:  Yes.

1          THE COURT:  All right, show Ms. Coggins and Ms.

2     Osirim the redacted indictment.  And the -- and just as long as

3     both counsel see the actual copy that's going in with the jury,

4     which may or may not have its lunch by now.

5          I have a Court Exhibit Number 1 here.

6          Joe, why don't you take that if anybody wants to see

7     the original?

8          And thank you for responding so quickly to Lenora's

9     page.

10          (Recess at 12:22 p.m., until 1:36 p.m.)

11          (Outside the presence of the jury)

12          THE COURT:  Okay, I have the juror questionnaire

13     number 2, which I will label as C-2, which is signed by the

14     foreman.  And I can't quite read the signature.  Jan Bear -- I

15     don't know, B-E-R-W something.

16          We would like to have the dates of the transactions

17     of the sale distribution of crack cocaine.  I mean, if they

18     look at the verdict sheet, they can see it.

19          And if they look at the indictment, which they have,

20     they can see it.  I don't know what it is they -- I don't

21     know -- do counsel have any ideas of how I can answer this

22     question?

23          MS. OSIRIM:  Your Honor, my best I guess sense of

24     what to do here would be to direct them to the charges as they

25     view them in the indictment and to line those up with what they



1    see in the verdict.

2                THE COURT:  And to?

3                MS. OSIRIM:  And to line up those charges with the

4    dates that they see in the verdict sheet, but I don't --

5                THE COURT:  Well, I'm not going to tell -- I can't

6    tell them to do that.

7                MS. OSIRIM:  To look at the indictment for the dates?

8                THE COURT:  I'm not going to tell them -- I'm sorry?

9                MS. OSIRIM:  To look at the indictment for the dates?

10               THE COURT:  I can simply say if you want to see

11   the -- if you want to know what the allegations the Government

12   has -- if you want to know the Government's allegations, you're

13   free to look at the indictment.

14               MS. OSIRIM:  Okay.  And we couldn't figure out if

15   they were confused because we did present a number of

16   transactions to other individuals involved other members of the

17   conspiracy, but not the Defendant.  We couldn't figure out if

18   that was the confusion because we presented during the control

19   buy of evidence, evidence of distributions by Dottie Good,

20   Chandler, Taft --

21               THE COURT:  Well, there are 33 counts.  I'm not -- I

22   wouldn't be -- I wouldn't be I'm not surprised if they're not

23   entirely clear.

24               Yes, Ms. Coggins?

25               MS. COGGINS:  Your Honor, there were also three

1    transactions that I brought up that do not appear on the

2    indictment. So I don't know if that was a confusion on their

3    part.

4          There was -- they were not charged -- he was not

5    charged with counterfeit substances.

6          THE COURT:  They don't then all I can do is repeat

7    the instruction that it's your recollection of the evidence

8    that controls and I can't really do anything more.

9          MS. OSIRIM:  He --

10         THE COURT:  I can say you have the indictment.  I can

11   do this much. I can say you have the indictment.  You have the

12   verdict sheet, but it is your recollection of the evidence that

13   controls.

14         MS. COGGINS:  Yes, Your Honor.

15         THE COURT:  Is that acceptable?

16         MS. OSIRIM:  Yes, Your Honor.

17         THE COURT:  Okay, then hmm, let me see if I can find

18   that.  Does one of you happen to have a copy of that --

19         MS. OSIRIM:  Of what, Your Honor?

20         THE COURT:  I -- oh.

21         MS. OSIRIM:  I have a copy of the indictment, a copy

22   of --

23         THE COURT:  Page, what page?

24         THE COURT RECORDER:  38.

25         THE COURT:  38.  Does anyone -- I brought that back

1    into the chambers.  Does anyone happen to have --

2            MS. OSIRIM:  I have the instructions.

3            THE COURT:  You have it here?  All right, have you

4    read what's on page 38?  I mean, you've previously says it was

5    okay.

6            MS. OSIRIM:  Yes, Your Honor.

7            MS. COGGINS:  I'm sorry, Your Honor, my client had

8    taken my copy with him over lunch and he was not --

9            THE COURT:  Could you show --

10           MS. OSIRIM:  See --

11           MS. COGGINS:  Thank you.

12           MS. OSIRIM:  Your Honor, the one thing that I was

13   just reading with defense counsel is -- and of course is pure

14   speculation perhaps because they asked for a definition for

15   distribution versus possession, that they're saying is which

16   counts are which, but I don't know.

17           THE COURT:  Well, they're going to have to ask a

18   clearer question if that's their question.  All right, so what

19   I would say is the following.

20           I'd say, ladies and gentlemen, you have the

21   indictment.  You have the verdict sheet.  The deter -- and then

22   I would just read the determination and nothing more than that.

23           That's acceptable to both sides?

24           MS. COGGINS:  It is, Your Honor.

25           MS. OSIRIM:  Yes, Your Honor.

1          THE COURT:  All right, could we bring the jury and

2    the alternates in, please?

3          MS. COGGINS:  Your Honor, I did want to ask you one

4    thing after they leave if you would --

5          THE COURT:  All right.

6          MS. COGGINS:  -- I don't forget.

7          THE COURT:  Could you -- the alternates are in the

8    courtroom.  Why don't you take your seats?  We're -- please if

9    you would, where you had previously sat.

10          There's a question that I'm going to answer that the

11    jury has asked and so you should hear the answer.

12          THE CLERK:  Please stand for the jury.

13          (Jury in at 1:42 p.m.)

14          (In the presence of the jury)

15          THE COURT:  Okay, welcome back, please be seated.  I

16    have a second question signed by the foreperson and by someone

17    whose signature I can't read.  Oh, I see.  Okay, so Juror

18    Number 7 and 8.

19          We would like to have the dates of the transactions

20    of the sale distribution of the crack cocaine.  Ladies and

21    gentlemen, you have the verdict sheet.  You have the

22    indictment.

23          The determination of all the facts in the case is

24    exclusively for you.  If your recollection of the evidence

25    differs from that expressed by me or counsel, it is your

1   recollection that is to govern.

2          If your judgment of what the evidence establishes

3   differs from that suggested by me or counsel, you should follow

4   your own judgment.

5          You should not infer from this that you are to ignore

6   what counsel have said in their opening and closing arguments

7   because you should consider their arguments insofar you believe

8   they are supported by the evidence, but you have the right to

9   reject any or all of their arguments because it is the

10  determination -- because the determination of the facts is

11  exclusively for you.

12         I now direct you to return to the jury room for

13  deliberations, please.  Thank you.

14      (Jury out at 1:44 p.m.)

15      (Out of the presence of the jury)

16         THE COURT:  Okay, please be seated.

17         You wanted to say something?

18         MS. COGGINS:  Judge, the two alternates are in the

19  room right outside with the door open.  And I know that there

20  are people that are coming back and forth into the courtroom.

21  I just thought it might be better if they have the door closed.

22         THE COURT:  Could we close the door that the

23  alternates are in, Ms. Wittje?

24         THE CLERK:  I'm sorry?

25         THE COURT:  Could we close the door that the

## ~~XXIII.~~ XXI.    Transcripts of Audio/Video Recordings

YOU HAVE HEARD AUDIO AND VIDEO RECORDINGS THAT WERE RECEIVED IN EVIDENCE, AND YOU WERE GIVEN WRITTEN TRANSCRIPTS OF THE RECORDINGS.

KEEP IN MIND THAT THE TRANSCRIPTS ARE NOT EVIDENCE. THEY WERE GIVEN TO YOU ONLY AS A GUIDE TO HELP YOU FOLLOW WHAT WAS BEING SAID. THE RECORDINGS THEMSELVES ARE THE EVIDENCE. IF YOU NOTICED ANY DIFFERENCES BETWEEN WHAT YOU HEARD ON THE RECORDINGS AND WHAT YOU READ IN THE TRANSCRIPTS, YOU MUST RELY ON WHAT YOU HEARD, NOT WHAT YOU READ. AND IF YOU COULD NOT HEAR OR UNDERSTAND CERTAIN PARTS OF THE RECORDINGS YOU MUST IGNORE THE TRANSCRIPTS AS FAR AS THOSE PARTS ARE CONCERNED.

THE TRANSCRIPTS NAME THE SPEAKERS. BUT REMEMBER, YOU MUST DECIDE WHO YOU ACTUALLY HEARD SPEAKING IN THE RECORDING. THE NAMES ON THE TRANSCRIPT WERE USED SIMPLY FOR YOUR CONVENIENCE.

## ~~XXIV.~~XXII.    Jury Recollection to Control

THE DETERMINATION OF ALL THE FACTS IN THE CASE IS EXCLUSIVELY FOR THE JURY.  IF YOUR RECOLLECTION OF THE EVIDENCE DIFFERS FROM THAT EXPRESSED BY ME OR COUNSEL, IT IS YOUR RECOLLECTION THAT IS TO GOVERN.  IF YOUR JUDGMENT OF WHAT THE EVIDENCE ESTABLISHES DIFFERS FROM THAT SUGGESTED BY ME OR COUNSEL, YOU SHOULD FOLLOW YOUR OWN JUDGMENT.  YOU SHOULD NOT INFER FROM THIS THAT YOU ARE TO IGNORE WHAT COUNSEL HAVE SAID IN THEIR OPENING AND CLOSING ADDRESSES, BECAUSE YOU SHOULD CONSIDER THEIR ARGUMENTS INSOFAR AS YOU BELIEVE THEY ARE SUPPORTED BY THE EVIDENCE.  BUT YOU HAVE THE RIGHT TO REJECT ANY OR ALL OF THEIR ARGUMENTS BECAUSE THE DETERMINATION OF THE FACTS IS EXCLUSIVELY FOR YOU.

## COUNT 2 - UNLAWFUL USE OF A COMMUNICATION FACILITY IN FURTHERANCE OF A DRUG FELONY

COUNT 2 CHARGES JUAN JARMON WITH UNLAWFUL USE OF A COMMUNICATION FACILITY IN FURTHERANCE OF A DRUG FELONY. THE GOVERNMENT MUST PROVE BEYOND A REASONABLE DOUBT THAT THE DEFENDANT KNOWINGLY OR INTENTIONALLY USED A COMMUNICATION FACILITY IN COMMITTING OR IN CAUSING OR FACILITATING THE COMMISSION OF THE DRUG TRAFFICKING OFFENSES CHARGED IN THE INDICTMENT.

THE TERM "COMMUNICATION FACILITY" AS USED IN THESE INSTRUCTIONS MEANS THE TELEPHONE, RADIO, WIRE OR ANY OTHER PUBLIC OR PRIVATE MEANS OF COMMUNICATION.

THE TERM "FACILITATE THE COMMISSION," AS USED IN THESE INSTRUCTIONS, MEANS TO ASSIST OR HELP SOMEONE DO SOMETHING OR IN SOME WAY MAKE THE TASK LESS DIFFICULT TO ACCOMPLISH.

## ~~XXII.~~ XX. Charts and Summaries

CHARTS HAVE BEEN SHOWN TO YOU BY BOTH SIDES DURING TRIAL.  THE CHARTS DEMONSTRATE WHAT THE GOVERNMENT OR DEFENSE BELIEVES THE EVIDENCE SHOWS.  THE CHARTS ARE NOT EVIDENCE.

1          THE COURT:  Any objection?

2          MS. COGGINS:  No, Your Honor.

3      (Government's Exhibit 201 to 245A received)

4      (Government's Exhibit 306G to 312A received)

5          THE COURT:  Okay.  Ladies and gentlemen, you're about

6  to hear audio recordings that were received in evidence.  You

7  just heard them being received in evidence.  And you will be

8  given written transcripts of the recordings.

9          Keep in mind that the recordings are, excuse me.  Keep

10  in mind that the transcripts are not evidence.  They are being

11  given to you only as a guide to help you follow what is being

12  said.  The recordings themselves are the evidence.

13          If you notice any differences between what you hear in

14  the recordings and what you read in the transcripts, you must

15  rely on what you hear, not on what you read.  And if you cannot

16  hear or understand certain parts of the recordings, you must

17  ignore the transcripts as far as those parts are concerned.

18          The transcripts name the speakers, but remember, you

19  must decide who is actually speaking in the recording.  The names

20  on the transcripts are used simply for your convenience.

21          Mr. Maiatico.

22  BY MR. MAIATICO:

23  Q    Agent Cardone, you said that you have reviewed these audio

24  recordings and transcript before coming here today?

25  A    Yes.

1    Q    Just so we can let the jury know, are they going to listen

2    to audio recordings of the calls, and will there be a rolling

3    transcript that accompanies that call?

4    A    Yes.

5    Q    Okay.  Before getting to the first call, I want to ask you

6    about an individual that you previously identified by the name of

7    E-Black or Edward Stinson.  Was Edward Stinson away from the

8    Blumberg Housing Projects during the time of this first call

9    we're going to hear and for extended periods of time throughout

10   2012, 2013 and 2014?

11   A    Yes.

12   Q    Okay.  Turning to Government Exhibit 201.  In front of you,

13   Agent Cardone, Government Exhibit 201A.  Did law enforcement

14   obtain a recorded call from October 3rd, 2012 at 8:48 p.m. that

15   was relevant to this investigation?

16   A    Yes.

17   Q    And was this a consensually recorded call?

18   A    Yes.

19   Q    Who were the participants that you identified on this call?

20   A    The participants were identified as Jamila Bellamy, Edward

21   Stinson and Juan Jarmon.

22   Q    Okay.  And in the rolling transcript that we're going to see

23   accompanying this audio of the telephone call, Jamila Bellamy,

24   what is she represented as or what initials are used?

25   A    JB.

1  Q    And for Edward Stinson or E-Black, what are the initials

2  that you're going to see on that transcript?

3  A    ES.

4  Q    And for Juan Jarmon or Yizzo, what are the initials you're

5  going to see on that transcript?

6  A    JJ.

7  Q    Very briefly I want to just talk about some of the other

8  abbreviations you might see on those transcripts when you were

9  reviewing these and approving these transcripts, what does UI

10 stand for?

11 A    UI stands for unintelligible.

12 Q    Sometimes you might see OV, what does that mean?

13 A    OV means there was an overlapping voice, or two people were

14 talking over each other.

15 Q    Okay.  And at times when either the language is

16 unintelligible or there's an overlapping voice, does that happen

17 frequently?

18 A    Yes.

19 Q    And for some of these 58 calls we're going to listen to, are

20 we hearing the entire call or are we just hearing some of the

21 relevant portions?

22 A    We are only hearing some of the relevant portions of the

23 call.

24 Q    Okay.  And in some calls we are going to hear the entire

25 call; is that correct?

1    A    Yes.

2    Q    Okay.  So, turning to then the October 3rd, 2012 call.

3         (Audio played at 12:30 p.m., ending at 12:35 p.m.)

4    BY MR. MAIATICO:

5    Q    All right.  Agent Cardone, I'm going to ask you to turn to

6    the transcript that was prepared which is marked as Exhibit 201A.

7              MR. MAIATICO:  If I could have that pulled up as well.

8    BY MR. MAIATICO:

9    Q    I'm going to ask you some questions about this approximately

10   five minute call.  If you turn to the transcript one page 5 and

11   the second line starts, "J.J., yeah."  There's a sentence there

12   it says, "But I said, I said if E-Black tell me to give you some

13   PD, I'll give you some PD and you can just," did you identify the

14   voice of the person that said that?

15   A    Yes.

16   Q    And who was that?

17   A    That individual was Juan Jarmon.

18   Q    Okay.  And I'm going to talk to you a little bit about that

19   term PD and also some other terms as well that you hear

20   throughout this call and you're going to hear throughout some

21   other calls.

22              Agent Cardone, during the course of this investigation,

23   how many of these types of calls did you listen to, both

24   consensually recorded calls or wiretap calls?

25   A    Thousands.

1          (Out of the presence of the jury)

2          THE COURT:  Okay, please be seated.  Is there

3    anything anybody would like to put on the record?

4          MS. OSIRIM:  No, Your Honor.

5          MS. COGGINS:  Your Honor, just that I'm staying in a

6    hotel.  One of the jurors is also in that hotel.  I've said

7    hello to him twice, that's all.

8          THE COURT:  That's fine.  Nothing else?  There's

9    nothing else you want to put on the record?

10          MS. COGGINS:  No, Your Honor.

11          THE COURT:  Okay, I would ask that you -- they're

12    inevitably going to be questions that I will discuss with

13    counsel before I answer them.  I would ask that you, to the

14    extent you can remain here, I would grateful.  Otherwise,

15    excuse me, please give Lenora your cell phone number so she can

16    reach you.

17          My thanks to all counsel.  You've worked very, very

18    hard in this case.  And I appreciate it.  I hope your clients

19    do as well.  And my thanks to our marshals.

20          (Recess at 11:18 a.m., until 12:20 p.m.)

21          (Outside the presence of the jury)

22          THE CLERK:  Court's in session.

23          THE COURT:  Okay, please be seated, everybody.  We

24    have a question from the jury.  I believe that you have copies

25    of it.  I've marked the question -- juror question number 1.

1    It'll be C 1, Court Exhibit 1.

2              "To Judge Diamond, we would like to request the

3    indictment and definition of distribution and possession under

4    the law."  I believe it's Juror Number 7 that's the foreperson,

5    the guy who was in that seat.

6              MS. COGGINS:  In the back on the end?

7              THE COURT:  Yeah.

8              MS. COGGINS:  Okay.

9              THE COURT:  Second from the end.

10             MS. COGGINS:  The second.

11             THE COURT:  I -- it was my oversight not to send the

12   indictment out -- the redacted indictment out with him, which I

13   will do now.

14             My clerk has given you -- I would propose simply

15   giving them the written instructions on -- from pages 58 to 70

16   of the final instructions in which I define possession and

17   distribution rather than read it to them again.  I don't see

18   any need to read it to them again.  They can read it for

19   themselves, but just one copy.

20             MS. OSIRIM:  I don't have an extra copy, Your Honor.

21             MS. COGGINS:  I have no -- that's fine, Your Honor.

22             THE COURT:  Okay, then, why don't we take your copy,

23   Ms. Coggins.  And does someone have a copy of the redacted

24   indictment.  Do you, Joe?

25             THE COURT RECORDER:  Yes.

1    THE COURT:  All right, show Ms. Coggins and Ms.

2    Osirim the redacted indictment.  And the -- and just as long as

3    both counsel see the actual copy that's going in with the jury,

4    which may or may not have its lunch by now.

5    I have a Court Exhibit Number 1 here.

6    Joe, why don't you take that if anybody wants to see

7    the original?

8    And thank you for responding so quickly to Lenora's

9    page.

10    (Recess at 12:22 p.m., until 1:36 p.m.)

11    (Outside the presence of the jury)

12    THE COURT:  Okay, I have the juror questionnaire

13    number 2, which I will label as C-2, which is signed by the

14    foreman.  And I can't quite read the signature.  Jan Bear -- I

15    don't know, B-E-R-W something.

16    We would like to have the dates of the transactions

17    of the sale distribution of crack cocaine.  I mean, if they

18    look at the verdict sheet, they can see it.

19    And if they look at the indictment, which they have,

20    they can see it.  I don't know what it is they -- I don't

21    know -- do counsel have any ideas of how I can answer this

22    question?

23    MS. OSIRIM:  Your Honor, my best I guess sense of

24    what to do here would be to direct them to the charges as they

25    view them in the indictment and to line those up with what they

1    see in the verdict.

2              THE COURT:  And to?

3              MS. OSIRIM:  And to line up those charges with the

4    dates that they see in the verdict sheet, but I don't --

5              THE COURT:  Well, I'm not going to tell -- I can't

6    tell them to do that.

7              MS. OSIRIM:  To look at the indictment for the dates?

8              THE COURT:  I'm not going to tell them -- I'm sorry?

9              MS. OSIRIM:  To look at the indictment for the dates?

10             THE COURT:  I can simply say if you want to see

11   the -- if you want to know what the allegations the Government

12   has -- if you want to know the Government's allegations, you're

13   free to look at the indictment.

14             MS. OSIRIM:  Okay.  And we couldn't figure out if

15   they were confused because we did present a number of

16   transactions to other individuals involved other members of the

17   conspiracy, but not the Defendant.  We couldn't figure out if

18   that was the confusion because we presented during the control

19   buy of evidence, evidence of distributions by Dottie Good,

20   Chandler, Taft --

21             THE COURT:  Well, there are 33 counts.  I'm not -- I

22   wouldn't be -- I wouldn't be I'm not surprised if they're not

23   entirely clear.

24             Yes, Ms. Coggins?

25             MS. COGGINS:  Your Honor, there were also three

1    transactions that I brought up that do not appear on the

2    indictment.  So I don't know if that was a confusion on their

3    part.

4              There was -- they were not charged -- he was not

5    charged with counterfeit substances.

6              THE COURT:  They don't then all I can do is repeat

7    the instruction that it's your recollection of the evidence

8    that controls and I can't really do anything more.

9              MS. OSIRIM:  He --

10             THE COURT:  I can say you have the indictment.  I can

11   do this much.  I can say you have the indictment.  You have the

12   verdict sheet, but it is your recollection of the evidence that

13   controls.

14             MS. COGGINS:  Yes, Your Honor.

15             THE COURT:  Is that acceptable?

16             MS. OSIRIM:  Yes, Your Honor.

17             THE COURT:  Okay, then hmm, let me see if I can find

18   that.  Does one of you happen to have a copy of that --

19             MS. OSIRIM:  Of what, Your Honor?

20             THE COURT:  I -- oh.

21             MS. OSIRIM:  I have a copy of the indictment, a copy

22   of --

23             THE COURT:  Page, what page?

24             THE COURT RECORDER:  38.

25             THE COURT:  38.  Does anyone -- I brought that back

1    into the chambers.  Does anyone happen to have --

2              MS. OSIRIM:  I have the instructions.

3              THE COURT:  You have it here?  All right, have you

4    read what's on page 38?  I mean, you've previously says it was

5    okay.

6              MS. OSIRIM:  Yes, Your Honor.

7              MS. COGGINS:  I'm sorry, Your Honor, my client had

8    taken my copy with him over lunch and he was not --

9              THE COURT:  Could you show --

10             MS. OSIRIM:  See --

11             MS. COGGINS:  Thank you.

12             MS. OSIRIM:  Your Honor, the one thing that I was

13   just reading with defense counsel is -- and of course is pure

14   speculation perhaps because they asked for a definition for

15   distribution versus possession, that they're saying is which

16   counts are which, but I don't know.

17             THE COURT:  Well, they're going to have to ask a

18   clearer question if that's their question.  All right, so what

19   I would say is the following.

20             I'd say, ladies and gentlemen, you have the

21   indictment.  You have the verdict sheet.  The deter -- and then

22   I would just read the determination and nothing more than that.

23             That's acceptable to both sides?

24             MS. COGGINS:  It is, Your Honor.

25             MS. OSIRIM:  Yes, Your Honor.

1          THE COURT:  All right, could we bring the jury and

2    the alternates in, please?

3          MS. COGGINS:  Your Honor, I did want to ask you one

4    thing after they leave if you would --

5          THE COURT:  All right.

6          MS. COGGINS:  -- I don't forget.

7          THE COURT:  Could you -- the alternates are in the

8    courtroom.  Why don't you take your seats?  We're -- please if

9    you would, where you had previously sat.

10         There's a question that I'm going to answer that the

11   jury has asked and so you should hear the answer.

12         THE CLERK:  Please stand for the jury.

13         (Jury in at 1:42 p.m.)

14         (In the presence of the jury)

15         THE COURT:  Okay, welcome back, please be seated.  I

16   have a second question signed by the foreperson and by someone

17   whose signature I can't read.  Oh, I see.  Okay, so Juror

18   Number 7 and 8.

19         We would like to have the dates of the transactions

20   of the sale distribution of the crack cocaine.  Ladies and

21   gentlemen, you have the verdict sheet.  You have the

22   indictment.

23         The determination of all the facts in the case is

24   exclusively for you.  If your recollection of the evidence

25   differs from that expressed by me or counsel, it is your

1    recollection that is to govern.

2          If your judgment of what the evidence establishes

3    differs from that suggested by me or counsel, you should follow

4    your own judgment.

5          You should not infer from this that you are to ignore

6    what counsel have said in their opening and closing arguments

7    because you should consider their arguments insofar you believe

8    they are supported by the evidence, but you have the right to

9    reject any or all of their arguments because it is the

10   determination -- because the determination of the facts is

11   exclusively for you.

12         I now direct you to return to the jury room for

13   deliberations, please.  Thank you.

14         (Jury out at 1:44 p.m.)

15         (Out of the presence of the jury)

16         THE COURT:  Okay, please be seated.

17         You wanted to say something?

18         MS. COGGINS:  Judge, the two alternates are in the

19   room right outside with the door open.  And I know that there

20   are people that are coming back and forth into the courtroom.

21   I just thought it might be better if they have the door closed.

22         THE COURT:  Could we close the door that the

23   alternates are in, Ms. Wittje?

24         THE CLERK:  I'm sorry?

25         THE COURT:  Could we close the door that the

~~XXIII.~~ XXI.    **Transcripts of Audio/Video Recordings**

YOU HAVE HEARD AUDIO AND VIDEO RECORDINGS THAT WERE RECEIVED IN EVIDENCE, AND YOU WERE GIVEN WRITTEN TRANSCRIPTS OF THE RECORDINGS.

KEEP IN MIND THAT THE TRANSCRIPTS ARE NOT EVIDENCE. THEY WERE GIVEN TO YOU ONLY AS A GUIDE TO HELP YOU FOLLOW WHAT WAS BEING SAID. THE RECORDINGS THEMSELVES ARE THE EVIDENCE. IF YOU NOTICED ANY DIFFERENCES BETWEEN WHAT YOU HEARD ON THE RECORDINGS AND WHAT YOU READ IN THE TRANSCRIPTS, YOU MUST RELY ON WHAT YOU HEARD, NOT WHAT YOU READ. AND IF YOU COULD NOT HEAR OR UNDERSTAND CERTAIN PARTS OF THE RECORDINGS YOU MUST IGNORE THE TRANSCRIPTS AS FAR AS THOSE PARTS ARE CONCERNED.

THE TRANSCRIPTS NAME THE SPEAKERS. BUT REMEMBER, YOU MUST DECIDE WHO YOU ACTUALLY HEARD SPEAKING IN THE RECORDING. THE NAMES ON THE TRANSCRIPT WERE USED SIMPLY FOR YOUR CONVENIENCE.

## ~~XXIV.~~ XXII.    Jury Recollection to Control

THE DETERMINATION OF ALL THE FACTS IN THE CASE IS EXCLUSIVELY FOR THE JURY.  IF YOUR RECOLLECTION OF THE EVIDENCE DIFFERS FROM THAT EXPRESSED BY ME OR COUNSEL, IT IS YOUR RECOLLECTION THAT IS TO GOVERN.  IF YOUR JUDGMENT OF WHAT THE EVIDENCE ESTABLISHES DIFFERS FROM THAT SUGGESTED BY ME OR COUNSEL, YOU SHOULD FOLLOW YOUR OWN JUDGMENT.  YOU SHOULD NOT INFER FROM THIS THAT YOU ARE TO IGNORE WHAT COUNSEL HAVE SAID IN THEIR OPENING AND CLOSING ADDRESSES, BECAUSE YOU SHOULD CONSIDER THEIR ARGUMENTS INSOFAR AS YOU BELIEVE THEY ARE SUPPORTED BY THE EVIDENCE.  BUT YOU HAVE THE RIGHT TO REJECT ANY OR ALL OF THEIR ARGUMENTS BECAUSE THE DETERMINATION OF THE FACTS IS EXCLUSIVELY FOR YOU.

## COUNT 2 - UNLAWFUL USE OF A COMMUNICATION FACILITY IN FURTHERANCE OF A DRUG FELONY

COUNT 2 CHARGES JUAN JARMON WITH  UNLAWFUL USE OF A COMMUNICATION FACILITY IN FURTHERANCE OF A DRUG FELONY.  THE GOVERNMENT MUST PROVE BEYOND A REASONABLE DOUBT THAT THE DEFENDANT KNOWINGLY OR INTENTIONALLY USED A COMMUNICATION FACILITY IN COMMITTING OR IN CAUSING OR FACILITATING THE COMMISSION OF THE DRUG TRAFFICKING OFFENSES CHARGED IN THE INDICTMENT.

THE TERM "COMMUNICATION FACILITY" AS USED IN THESE INSTRUCTIONS MEANS THE TELEPHONE, RADIO, WIRE OR ANY OTHER PUBLIC OR PRIVATE MEANS OF COMMUNICATION.

THE TERM "FACILITATE THE COMMISSION," AS USED IN THESE INSTRUCTIONS, MEANS TO ASSIST OR HELP SOMEONE DO SOMETHING OR IN SOME WAY MAKE THE TASK LESS DIFFICULT TO ACCOMPLISH.

## ~~XXII.~~XX. Charts and Summaries

CHARTS HAVE BEEN SHOWN TO YOU BY BOTH SIDES DURING TRIAL.  THE CHARTS DEMONSTRATE WHAT THE GOVERNMENT OR DEFENSE BELIEVES THE EVIDENCE SHOWS.  THE CHARTS ARE NOT EVIDENCE.

1              THE COURT:  Any objection?

2              MS. COGGINS:  No, Your Honor.

3          (Government's Exhibit 201 to 245A received)

4          (Government's Exhibit 306G to 312A received)

5              THE COURT:  Okay.  Ladies and gentlemen, you're about

6    to hear audio recordings that were received in evidence.  You

7    just heard them being received in evidence.  And you will be

8    given written transcripts of the recordings.

9              Keep in mind that the recordings are, excuse me.  Keep

10   in mind that the transcripts are not evidence.  They are being

11   given to you only as a guide to help you follow what is being

12   said.  The recordings themselves are the evidence.

13             If you notice any differences between what you hear in

14   the recordings and what you read in the transcripts, you must

15   rely on what you hear, not on what you read.  And if you cannot

16   hear or understand certain parts of the recordings, you must

17   ignore the transcripts as far as those parts are concerned.

18             The transcripts name the speakers, but remember, you

19   must decide who is actually speaking in the recording.  The names

20   on the transcripts are used simply for your convenience.

21             Mr. Maiatico.

22   BY MR. MAIATICO:

23   Q    Agent Cardone, you said that you have reviewed these audio

24   recordings and transcript before coming here today?

25   A    Yes.

1    Q    Just so we can let the jury know, are they going to listen

2    to audio recordings of the calls, and will there be a rolling

3    transcript that accompanies that call?

4    A    Yes.

5    Q    Okay.  Before getting to the first call, I want to ask you

6    about an individual that you previously identified by the name of

7    E-Black or Edward Stinson.  Was Edward Stinson away from the

8    Blumberg Housing Projects during the time of this first call

9    we're going to hear and for extended periods of time throughout

10   2012, 2013 and 2014?

11   A    Yes.

12   Q    Okay.  Turning to Government Exhibit 201.  In front of you,

13   Agent Cardone, Government Exhibit 201A.  Did law enforcement

14   obtain a recorded call from October 3rd, 2012 at 8:48 p.m. that

15   was relevant to this investigation?

16   A    Yes.

17   Q    And was this a consensually recorded call?

18   A    Yes.

19   Q    Who were the participants that you identified on this call?

20   A    The participants were identified as Jamila Bellamy, Edward

21   Stinson and Juan Jarmon.

22   Q    Okay.  And in the rolling transcript that we're going to see

23   accompanying this audio of the telephone call, Jamila Bellamy,

24   what is she represented as or what initials are used?

25   A    JB.

1    Q    And for Edward Stinson or E-Black, what are the initials

2    that you're going to see on that transcript?

3    A    ES.

4    Q    And for Juan Jarmon or Yizzo, what are the initials you're

5    going to see on that transcript?

6    A    JJ.

7    Q    Very briefly I want to just talk about some of the other

8    abbreviations you might see on those transcripts when you were

9    reviewing these and approving these transcripts, what does UI

10   stand for?

11   A    UI stands for unintelligible.

12   Q    Sometimes you might see OV, what does that mean?

13   A    OV means there was an overlapping voice, or two people were

14   talking over each other.

15   Q    Okay.  And at times when either the language is

16   unintelligible or there's an overlapping voice, does that happen

17   frequently?

18   A    Yes.

19   Q    And for some of these 58 calls we're going to listen to, are

20   we hearing the entire call or are we just hearing some of the

21   relevant portions?

22   A    We are only hearing some of the relevant portions of the

23   call.

24   Q    Okay.  And in some calls we are going to hear the entire

25   call; is that correct?

1   A    Yes.

2   Q    Okay.  So, turning to then the October 3rd, 2012 call.

3        (Audio played at 12:30 p.m., ending at 12:35 p.m.)

4   BY MR. MAIATICO:

5   Q    All right.  Agent Cardone, I'm going to ask you to turn to

6   the transcript that was prepared which is marked as Exhibit 201A.

7           MR. MAIATICO:  If I could have that pulled up as well.

8   BY MR. MAIATICO:

9   Q    I'm going to ask you some questions about this approximately

10  five minute call.  If you turn to the transcript one page 5 and

11  the second line starts, "J.J., yeah."  There's a sentence there

12  it says, "But I said, I said if E-Black tell me to give you some

13  PD, I'll give you some PD and you can just," did you identify the

14  voice of the person that said that?

15  A    Yes.

16  Q    And who was that?

17  A    That individual was Juan Jarmon.

18  Q    Okay.  And I'm going to talk to you a little bit about that

19  term PD and also some other terms as well that you hear

20  throughout this call and you're going to hear throughout some

21  other calls.

22           Agent Cardone, during the course of this investigation,

23  how many of these types of calls did you listen to, both

24  consensually recorded calls or wiretap calls?

25  A    Thousands.

Juan Jarmon #75891-066
USP Lee, P.O. Box 305
Jonesville, VA 24263



United States District Court
504 Hamilton Street
Allentown, Pa, 18101

REC'D OCT 21 2024

U.S.M.S.
X-RAY

LEGAL
MAIL